DIAMOND v. DREW (two cases).—68 S. W. (2d) 955.

Middle Section.   December 22, 1933.

Petition for Certiorari denied by Supreme Court, March 10, 1934.

Elkin Garfinkle, of Nashville, for plaintiff in error.
Kannard & Kannard, of Nashville, for defendants in error.

FAW, P. J.    The plaintiff in error, Mrs. Louis Diamond (herein-
after called defendant), is the owner of a city lot with a dwelling
house thereon known as 1006 Madison street in the city of Nashville,
Tennessee, and the defendants in error, George Drew and his wife,
Ella Drew (hereinafter called plaintiffs), occupied the above-men-
tioned premises, as tenants of defendant, from the early part of
January to the latter part of May, in the year of 1931.

On April 11, 1931, Ella Drew suffered serious personal injuries as
the result of the collapse of a ''sleeper'' supporting a ''platform''
attached to the house occupied by plaintiffs, and, on April 22, 1931,
she sued Mrs. Louis Diamond for $5.000 as damages on account of
the aforesaid injuries to her person.

On the same day, George Drew, the husband of Ella Drew, sued
Mrs. Louis Diamond for $1,000 on account of the loss of his wife's
services and for expenses incurred for doctor's bills, medical expenses,
and other expenses made necessary by his wife's injuries as aforesaid.

The two cases were, by consent, tried together in the Third circuit
court of Davidson county, and have been brought to this court in one
record.

There was a jury trial below upon the issues made by the defend-
ant's plea of not guilty to the plaintiff's declaration in each case,
and the jury found the issues in favor of the plaintiffs, and assessed
the damages of Ella Drew at $200 and the damages of George Drew
at $100.

At the close of all the evidence, a motion for a directed verdict
on behalf of the defendant was made and overruled, and the case was
submitted to the jury with the result before stated.

After verdicts and judgments, a motion for a new trial on behalf
of the defendant in each of the cases was made and overruled, and de-
fendant excepted to the action of the trial court and appealed to this
court, and is here insisting, through assignments of error, and sup-
porting brief and argument that the trial court erred in overruling

her motion for directed verdicts, and that there is no evidence to support the verdicts.

The lot on which the house in question is situated abuts on the north side of Madison street. The house was a two-room frame tenement, with one of the rooms in the rear of the other. The main entrance and exit to and from the house was from and to Madison street, but there was no door in the end of the house fronting Madison street. There was a door leading from each of the rooms onto a porch along the east side of the house. Extending from the south end of the porch northward along the east side of the porch for a distance of about eight and one-half feet there was a "platform" about four and one-half feet wide, which appears to have been merely an extension of the porch of the dimensions named. The floor of the platform was three feet and three inches above the ground, and at the south end of the platform there were steps leading to the ground.

The only convenient way of access to the house from Madison street was over the platform and steps above mentioned, and the plaintiffs and other persons entering and leaving the house used them for that purpose, and that was obviously the purpose for which they were constructed.

The floor of the platform rested on sills at or near either side and a sleeper in the center. The floor was made of oak boards or plank, one inch thick, nailed to the sills and sleeper. Some of the floor boards extended across the entire width of the platform and others were in two sections—each section extending only from the outer edge of the platform to the middle of the center sleeper, with one end resting on the sill and the other on the sleeper.

On April 11, 1931, plaintiff Ella Drew (a woman forty-seven years of age and weighing two hundred and five pounds), while passing over said platform on a proper household mission, stopped in the middle of the platform and "stooped down," and at that instant the sleeper broke immediately under her and her right foot and leg went down between the ends of two of the boards before mentioned, and were extricated by her husband and another man present with considerable difficulty. She was seriously injured as the result of the breaking of the sleeper as stated, but we need not dwell on the extent of her injuries, for, if the defendant is liable at all, the verdicts are clearly not excessive, and there is no claim that they are excessive.

Plaintiffs had been living in the house in question about three months at the time plaintiff Ella was injured. They leased the premises by the month, at $10 per month, payable monthly or "every two weeks," at their option.

There is neither averment nor proof of an agreement on the part of defendant to make any repairs on the property or of an assurance or statement at any time by the landlord that the premises were safe.

The averments of the declarations by which plaintiffs seek to charge defendant with negligence are that "the defendant had been the owner of the above mentioned dwelling-house for a considerable period of time prior to the date of the above mentioned accident," and that "she knew or by the exercise of reasonable care and precaution should have known of the rotten, insecure, defective and unsafe condition of said premises as above set forth, and in total disregard of the rights of others and especially of the rights of the plaintiff, she was grossly negligent in permitting said premises to be and to remain in the rotten, unsafe, defective and dangerous condition as above set forth."

It is seen that plaintiffs do not seek to base their cause of action upon a matter of contract, but upon the landlord's obligation to the tenant not to expose her to danger of which the landlord knew, or could have known by reasonable care.

There is ample proof that the sleeper was badly decayed—either from dry rot or from the inroads of worms or termites—and that it broke under the weight of plaintiff Ella because of its decayed condition; but there is not a semblance of evidence that the defendant knew that the sleeper was unsound.

The landlord is not an insurer of the safety of the leased premises. Schmalzried v. White, 97 Tenn., 36, 39, 36 S. W., 393, 32 L. R. A., 782; Boyd v. McCarty, 142 Tenn., 670, 674, 222 S. W., 528; Hamilton v. Moore, 14 Tenn. App., 584, 586.

Neither is the landlord "liable for hidden defects from which injuries were received, without regard to the question of diligence and reasonable care." Schmalzried v. White, supra, page 41 of 97 Tenn., 36 S. W., 393, 395.

"He is liable only for injury arising from a failure to act with the degree of forethought and intelligence that characterizes the conduct of prudent men in general." 20 R. C. L., page 8, par. 3.

This case is to be determined upon an application of the rule that, "if a landlord lease premises which are, at the time, in an unsafe and dangerous condition, he will be liable to his tenant for damages that may result, if he knows the fact and conceals it, or if, by reasonable care and diligence, he could have known of such dangerous and unsafe condition, provided reasonable care and diligence is exercised by the tenant on his part." Hines v. Willcox, 96 Tenn., 148, 160, 33 S. W., 914, 34 L. R. A., 824, 832, 54 Am. St. Rep., 823.

In the later opinion in the same case (sub nom. Willcox v. Hines, 100 Tenn., 538, 541, 46 S. W., 297, 41 L. R. A., 278, 66 Am. St. Rep., 770) it is said that, in Hines v. Willcox, supra, the landlord was "only

held liable for what he knew, or might have known by the exercise of reasonable care and diligence, and then only when the tenant failed to ascertain such facts by the exercise of reasonable care and diligence on his part.''

The rule thus laid down '' 'does not place upon the landlord the obligation of an insurer or warrantor by contract, nor does it impose the extreme duty of constant care and inspection,' but only reasonable care and diligence; and the like reasonable care and diligence are required of the tenant, thus imposing reasonable care and good faith upon both, in the absence of any contract or warranty.'' Willcox v. Hines, supra, page 548 of 100 Tenn., 46 S. W., 297, 299.

''The degree of care and diligence required of each is the same; that is, reasonable care and diligence, such as a reasonably prudent person would exercise if surrounded by the same or similar circumstances.'' Willcox v. Hines, supra, page 560 of 100 Tenn., 46 S. W., 297, 302.

The testimony of the plaintiffs and their witnesses, as well as that of the witnesses for defendant, is to the effect that the floor of the platform in question was sound and afforded no evidence of weakness or defects in the supports beneath it, and there is not a witness in the case who, so far as appears from his or her testimony, ever so much as suspected, prior to the time Ella Drew was injured, that the platform was defective.

The plaintiffs had lived in the house for about three months, and ordinarily walked upon the platform several times each day, and they state, in substance, that it looked safe and sound and all right and they had not suspected that it was dangerous in any respect.

It is not altogether clear that there is evidence to support the conclusion that there was a dangerous defect in the platform at the time plaintiffs went into possession of the premises, and, in the absence of contract, the tenant has no recourse against the landlord for defects that arise after the lease has been made and while the tenant is in possession. Willcox v. Hines, supra, page 557 of 100 Tenn., 46 S. W., 297.

But, assuming that it was for the jury to say whether the condition of the sleeper at the time Ella Drew was injured justified the inference that it was decayed and likely to break at the beginning of plaintiff's lease, the determinative question is, Whether there is any material evidence in the record that the defendant failed to exercise reasonable care and diligence—that is, such care and diligence as a reasonably prudent person would exercise under the same or similar circumstances—to discover the decayed condition of the sleeper?

The defect in the sleeper was hidden from view, and could not be discovered except by taking up the floor of the platform (which was

sound and securely nailed down), or possibly by crawling under the platform and making a minute inspection of the sleeper, and to hold 'that defendant did not exercise reasonable care and diligence in the circumstances disclosed by this record would be to impose upon the defendant an "extreme duty of constant care and inspection" not required by law. Baddeley v. Shea, 114 Cal., 1, 45 P., 990, 33 L. R. A., 747, 750, 55 Am. St. Rep., 56.

We are of the opinion that the motions for directed verdicts in favor of the defendant should have been sustained. The assignments of error are therefore sustained, the judgments appealed from are reversed, the verdicts of the jury are set aside, and the plaintiffs' suits are dismissed.

The costs of the cause, including the costs of the appeal, will be adjudged against the plaintiffs George Drew and Ella Drew.

Crownover and DeWitt, JJ., concur.