JOLLY MOTOR LIVERY CORPORATION *et al. v.* ALLENBERG.

(*Jackson*, April Term, 1949.)

Opinion filed June 18, 1949.

Albert G. Riley, Memphis, for plaintiff in error.

Allen Cox, Jr. and Abe D. Waldauer, of Memphis, for defendant in error Allenberg.

Emmett W. Braden, of Memphis, for Mrs. Overton.

Mr. Justice Prewitt delivered the opinion of the Court.

The circuit judge granted a motion for a new trial and dismissed the suits. Plaintiffs appealed in error to the Court of Appeals and that Court affirmed the judgment of the circuit court, both courts holding that there was no negligence shown on the part of defendant.

Plaintiffs, Jolly Motor Livery Corporation and Jolly Cab Company, sued defendant, Julian Allenberg, and

Mrs. May Hill Overton for damages caused by the falling of a brick wall belonging to defendant, resulting in property damages to the motor vehicles of plaintiffs. At the conclusion of plaintiffs' proof the court directed a verdict in favor of Mrs. Overton, from which she has not appealed.

A motion for a directed verdict in favor of Allenberg was made at the conclusion of plaintiffs' evidence and renewed at the conclusion of all the evidence in the case. These motions were disallowed.

The jury returned a verdict in favor of plaintiffs and assessed the damages of the Jolly Motor Livery Corporation at $700 and the damages of the Jolly Cab Company at $3500.

Defendant renewed his motion for a directed verdict on his motion for a new trial. This motion was sustained by the circuit judge and the suits dismissed. The Court of Appeals affirmed the action of the circuit judge, and the only question before this Court is whether there is any evidence of negligence on the part of defendant.

The proof shows that on August 10, 1944, defendant leased to plaintiffs a lot on Court Avenue in the City of Memphis, which was a vacant lot and which plaintiffs used as a storage lot for its automobiles and trucks. On the north boundary line of this lot there was a brick wall about 25 feet high which adjoined on the west end a building known as the Masonic Temple and ran east for a distance of about 60 feet. This wall along that part of the north boundary line formed the south wall of the property owned by Mrs. Overton; that the improvement upon the premises on Court Avenue was erected many years ago, was under a roof, and was for a long time used for storage purposes; that in the month of March,

1944, a fire partially destroyed the building, and during the summer of that year the remaining part of the building was torn down and removed except the brick wall; that on December 26, 1944, this wall collapsed, was destroyed and fell upon the automobiles of plaintiffs, destroying many of them and damaging others.

Defendant's proof shows that following the fire in the building in March, 1944, it was partially destroyed; that during the summer Fred Sexton, a highly competent contractor in Memphis, at defendant's request, removed and tore down the remaining part of the building damaged by fire and made the property an open-air lot; that Sexton made all reasonable repairs on various walls surrounding the property. Defendant denied that the wall collapsed by reason of any negligence on his part; that at the time of the execution of the lease plaintiffs had an equal opportunity to see the premises and observe any defects. Defendant's proof also shows that plaintiffs constantly permitted cars, trucks and other vehicles to bump against the wall in being parked, and negligently failed and neglected to place any bumpers or safeguards to prevent said vehicles from running into, striking or coming in contact with the wall.

It further appears from the proof that after the fire the premises were inspected by Charles Nunnery, Chief of the City of Memphis Fire Prevention Bureau, and Charles Chandler, City of Memphis Building Inspector. Both these parties were of opinion that the wall in the northwest corner was safe.

After the fire, defendant entered into a verbal contract with Sexton to clean up the premises and make whatever repairs were necessary to make the property safe and usable. This contract was on a cost plus basis. De-

fendant did not attempt to exercise any control over Sexton, but left it entirely to him to do whatever was necessary. Sexton is a high-class and capable general contractor, with many years of experience.

Defendant leased the property to David Jolly, president of both corporations, to be used as an open-air parking lot under a written contract. Jolly was the owner of the property which adjoined defendant's lot on the east, and was familiar with the leased premises; in fact, he had stored vehicles there since 1940. Jolly was well acquainted with Sexton as a builder, had employed him as a contractor on his own account, inspected the property with him, including that part of the wall which collapsed, and accepted Sexton's assurance that the wall was safe. Defendant did not authorize Sexton to make any representation to Jolly or anyone else as to the condition of the property.

On December 26, 1944, a part of the wall collapsed causing the damages above referred to.

The witness B. S. Merrill, a structural engineer, testified that on January 5 following the collapse of the wall he made an examination of what was left of the wreckage and found some of the bricks very poor and some very soft, but there was not a great deal of irregularity and not much leaning in the wall; that if he had been asked his opinion he would have advised that the wall appeared to be sound but exceeded the supported dimensions of standard practice, and would have recommended some arrangement to stiffen the wall.

The witness Harry Hunter, also a structural engineer, testified that he made an examination of the wall after it had fallen; that the bricks were mostly of poor quality;

that the wall did not have sufficient anchors or head; that it was an old wall and of poor quality.

The question presented is whether there is any material evidence tending to show that at the time of the execution of the lease defendant knew, or in the exercise of reasonable care should have known, the wall was unsafe.

A landlord is not an insurer of the safety of the leased premises. *Schmalzried* v. *State*, 97 Tenn. 36, 37, 36 S. W. 393, 32 L. R. A. 782; *Boyd* v. *McCarty*, 142 Tenn. 670, 222 S. W. 528.

■ A landlord is liable only for injury arising from a failure to act with the degree of forethought and intelligence that characterizes the conduct of prudent men in general. 20 R. C. L., sec. 3, p. 8.

■ The rule does not place upon the landlord the obligation of an insurer or warrantor by contract, nor does it impose the extreme duty of constant care and inspection, but only reasonable care and diligence; and like reasonable care and diligence are required of the tenant, thus imposing reasonable care and good faith upon both in the absence of any contract or warranty. *Wilcox* v. *Hines*, 100 Tenn. 538, 46 S. W. 297, 41 L. R. A. 278, 66 Am. St. Rep. 770; *Manes v. Hines & McNair Hotels, Inc.*, 184 Tenn. 210, 197 S. W. (2d) 889.

■■ Defendant contracted with Sexton to make all necessary repairs before making the lease to plaintiffs, but exercised no control over him except as to results.

''An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work. The employer of such a contractor, if he be a fit

and proper person, and the work be not in itself unlawful or a nuisance in itself, or necessarily attended with danger to others, will not be responsible for his negligence, or that of his subcontractors or his servants. Mr. Thompson, in his work upon Negligence, says that 'in every case, the decisive question is, had the defendant the right to control, in the given particular, the conduct of the person doing the wrong?' 2 Thompson on Negligence, 909." *Powell* v. *Virginia Construction Co.*, 88 Tenn. 692, 697-698, 13 S. W. 691, 692, 17 Am. St. Rep. 925.

This leading case has been constantly followed in our decisions. See *National Optical Stores Co., Inc.*, v. *Bryant*, 181 Tenn. 266, 181 S. W. (2d) 139. Also, a full discussion of the rule may be found in *D. M. Rose & Co.* v. *Snyder*, 185 Tenn. 499, 206 S. W. (2d) 897.

 In the present case defendant was not an insurer of the safety of the leased premises, nor was he subject to the absolute duty to see that the leased premises were safe. His duty was to exercise reasonable care and diligence to see that the premises were turned over to plaintiffs in a reasonably safe condition. Defendant employed a competent contractor to put the premises in a safe condition, and the wall in question was inspected by the City Building Inspector and the Chief of the Fire Prevention Bureau, either of whom had the authority to order the wall torn down or removed if, in their opinion, it was unsafe. If these parties were mistaken in their judgment as to the condition of the wall, such error of judgment cannot be imputed to defendant.

We find no negligence on the part of defendant and the writ must be denied.

All concur.