GLASSMAN *v.* MARTIN.

(*Jackson,* April Term, 1954.)

Opinion filed May 21, 1954.

Rehearing denied July 23, 1954.

DAVID BALLON, J. GRANVILLE FARRAR and ROBERT R. KRIVCHER, all of Memphis, for petitioner.

DAVIS & DAVIS, of Memphis, for respondent.

Mr. Chief Justice Neil delivered the opinion of the Court.

The case before us involves the liability of a landlord for damages for personal injuries caused by defective steps. There was a verdict in favor of the injured tenant from which an appeal was prayed and granted to the Court of Appeals. The judgment of the trial court was affirmed, and we granted certiorari to review the question of the legal duty devolving upon the landlord. The case was orally argued at Jackson, and we now have the issue for consideration, i. e. whether or not there is any material evidence of legal liability; or to state it differently, is there any material evidence of defects in the premises of which the landlord had knowledge or could have had by the exercise of reasonable care?

The rule of liability in cases of this kind is stated in *Hines* v. *Wilcox,* 96 Tenn. 328-338, 34 S. W. 420, 34 L. R. A. 824, 832. In that case the rule laid down does not place upon the landlord the obligation of an insurer or warrantor by contract, nor does it impose the extreme duty of constant care and inspection. In *Schmalzried* v. *White,* 97 Tenn. 36, 39, 40, 36 S. W. 393, 394, 32 L. R. A. 782, the following statement is quoted with approval from a New York case:

"In *Edwards* v. *New York & H. R. Co.,* 98 N. Y. 245, it is said, 'It is a universal rule, to which no exception can be found in any case now regarded

as authority, that upon the demise of real estate, there is no implied warranty that the property is fit for occupation, or suitable for the use or purpose for which it is hired.' "

Many other decisions are referred to as authority, the Court concluding with the statement that the holding is not intended to conflict with *Hines* v. *Wilcox*, supra.

"In regard to hidden or secret defects or dangers, the cases are uniform that if they exist, and are known to the landlord, and not disclosed to the tenant, the landlord will be liable, *because such conduct amounts to a fraud.*" *Wilcox* v. *Hines*, 100 Tenn. 538, 546, 46 S.W. 297, 299, 41 L.R.A. 278. (Emphasis supplied.)

The defect in the case at bar was a hidden defect, as shown by all the evidence, and no insistence is made that the landlord's conduct *amounted to a fraud.* He is liable, if at all, upon the theory that he knew "or in good faith should know (about the defect), and which the tenant does not know and cannot ascertain by the exercise of reasonable care and diligence."

■ In speaking of the degree of care required of both the landlord and the tenant, it is said in *Wilcox* v. *Hines*, 100 Tenn. at page 560, 46 S.W. at page 302: "The degree of care and diligence required of each is the same; that is, reasonable care and diligence, such as a reasonably prudent person would exercise if surrounded by the same or similar circumstances." Immediately following the foregoing statement of the rule the Court seems to argue the point that because the landlord owns the property he is in a better position than his tenant to know about defects. Whether this is true or not depends upon the facts of each particular case.

Now in the Wilcox case, supra, it was held that while the defect was "clearly apparent, but the cause of it, and the danger arising out of it, were not." The Court expressly found that the "landlord's attention had been called to it more than once by a former tenant, *and he had been notified of the danger.*" (Emphasis supplied.)

The plaintiff and her husband had occupied one side of defendant Glassman's duplex apartment under an oral lease for approximately two years on a month to month basis. Mrs. Martin testified that at the inception of the oral lease Mr. Glassman agreed to "repair and fix it (the premises to be occupied) in good shape and take care of it", and "if anything happened later he agreed to fix it." Glassman denied making such an agreement but testified that he would fix his property anyway whenever repairs were needed and that he and his carpenter made frequent inspections of the properties to that end. The Court of Appeals expressed the opinion "The verdict of the jury, however, settled the fact of such an agreement to maintain and to repair during the tenancy."

The liability of the defendant for the wrongs and injuries turned upon whether or not he had breached his contract to keep the premises in repair during the plaintiff's tenancy. Conceding this to be true we are constrained to hold that the contract did not make him an insurer of the safety of the premises. "Neither is the landlord 'liable for hidden defects from which injuries were received, without regard to the question of diligence and reasonable care.'" *Diamond* v. *Drew,* 17 Tenn. App. 488, 491, 68 S.W. (2d) 955, 956, and cases cited. The Court of Appeals correctly held that the defendant could

not be held to have breached his contract until after notice of the defect and a reasonable opportunity to repair.

■ The defect complained of, and which gave rise to this suit, was the riser on the steps leading into the apartment had been eaten away by termite action. These steps were of wooden material, and consisted of three treads which were exposed to view, the bottom of each riser resting upon a small piece of concrete or brick. While the steps, including the riser, were exposed to view the effect of termite action was not so exposed. Both Mr. and Mrs. Martin testified they had noticed nothing wrong with the steps and they seemed solid. The defendant Glassman and his carpenter testified they had discovered nothing wrong with them. On the occasion of the accident Mrs. Martin was sweeping the back steps to her apartment and was on the bottom step when the entire step dropped suddenly causing her to fall on a bottle nearby which cut her severely. Upon careful examination it developed that the riser on one side was rotten or badly eaten away by termites on the lower end, Following the above statement of facts the Court of Appeals made the following comment:

"It is a matter of common knowledge that termite damage occurs gradually and not suddenly; also, that a hollow piece of timber, when tapped, sounds differently from a solid piece; also that a hollow piece will cause a thin shell of the exterior to puncture from the jab of a screw driver or any similar tool."

We agree with the foregoing statement; also that the tenant had no reason to suspect that the steps were defec-

tive. The outward appearance gave no evidence whatever of the hidden defect.

The defendant and his carpenter inspected this duplex apartment periodically and testified they could see nothing wrong with the steps; that there was no evidence of any defect in the risers.

 The contention seems to be that the defect could have been discovered by merely punching the steps and risers with a screw driver or ice pick, and it was his duty to do so under the circumstances. Our conclusion is that the law imposes no such legal duty. For us to announce such a rule would make the landlord an insurer of the leased premises. The cases cited in this opinion, the *Wilcox case, Diamond* v. *Drew*, supra, and cases cited therein, in defining the duty of the landlord to discover latent defects hold: The law does not impose upon the landlord *the duty of constant care and inspection* of the premises. It imposes upon him the duty of *reasonable care* to inform himself of the condition of the property.

 There is no authority, so far as we have found, which holds that the landlord must exercise the highest degree of care to discover latent defects, but only reasonable diligence in this regard. There is no evidence that the defendant in the case at bar did not exercise reasonable care and diligence to discover the defect which caused the injury to the plaintiff. His oral contract to keep the premises in repair did not require that he use a screw driver or some other similar instrument to punch holes, or try to, in an effort to discover if termites had eaten away some part of the premises. The law imposes no such duty regardless of whether the liability of the landlord is based upon alleged common-law negligence or breach of contract. Just where would the defendant, or

his carpenter, start such an operation, and how often is it to be repeated, in order to comply with such a drastic requirement?

We think the case before us is controlled by *Diamond* v. *Drew*, certiorari being denied by this Court. The facts disclosed a hidden defect in a "sleeper" supporting a platform caused by "dry rot" or by the action of termites. Neither the plaintiff nor the defendant knew of the defect. The defendant's liability turned upon the degree of care required of him to discover the defect. We find the same determinative issue in the case at bar. In concluding the opinion of the Court of Appeals in the Diamond case, Judge Faw, speaking for the court, said:

"The defect in the sleeper was hidden from view, and could not be discovered except by taking up the floor of the platform (which was sound and securely nailed down), or possibly by crawling under the platform and making a minute inspection of the sleeper, and to hold that defendant did not exercise reasonable care and diligence in the circumstances disclosed by this record would be to impose upon the defendant an 'extreme duty of constant care and inspection' not required by law. *Baddeley* v. *Shea*, 114 Cal. 1, 45 P. 990, 33 L. R. A. 747, 750, 55 Am. St. Rep. 56."

We are constrained to hold that defendant's motion for peremptory instructions should have been sustained. The case is accordingly reversed and dismissed.

LLOYD S. ADAMS, Special Justice, not participating.