# PULASKI HOUSING AUTHORITY v. MRS. BLONDINA SMITH.

# PULASKI HOUSING AUTHORITY v. JOHN R. SMITH.—282 S. W. (2d) 213.

Middle Section. July 1, 1955.

Petition for Certiorari denied by Supreme Court, October 7, 1955.

214

Dan E. McGugin, and H. Francis Stewart, both of Nashville, and Jack B. Henry, of Pulaski, for Pulaski Housing Authority, plaintiff in error.

. Harry Phillips, of Nashville, and Wade & Forrester, of Pulaski, for Mr. and Mrs. Smith, defendants in error.

FELTS, J.  These actions were brought by tenants in an apartment against their landlord, Pulaski Housing Authority, to recover for personal injuries received by them in an explosion of butane gas which occurred the afternoon they moved into the apartment and while its gas appliances were being lighted and demonstrated to them by an alleged servant of defendant.

They averred that defendant leased them the apartment as ready and fit for occupancy when in fact it was unsafe and dangerous because of a defect in its gas line which would let gas escape and accumulate in the pantry and kitchen; and that when they moved in, defendant's servant turned in the gas, and, in striking matches to light and demonstrate the appliances, set fire to the gas that had accumulated in the kitchen, and caused an explosion which burned Mrs. Smith severely and Mr. Smith to a less extent.

Defendant pleaded the general issue of not guilty. On the trial there was a verdict and judgment in favor of Mrs. Smith for $14,000, and a verdict and judgment for Mr. Smith for $1,000.  Defendant appealed in error, and insists that the Trial Judge should have directed verdicts for it because there was no evidence to support a verdict for plaintiffs.

In arguing this question learned counsel differ widely in their views of the evidence.  We must, however, take the view most favorable to plaintiffs, in testing whether verdicts should have been directed for defendant. Smith v. Sloan, 189 Tenn. 368, 376-377, 225 S. W. (2d) 539, 542, 227 S. W. (2d) 2.

Defendant, Pulaski Housing Authority, is a corporation organized under our statute, 1950 Tenn. Code Supp. Sec. 3647.1 et seq., and has the broad powers authorized by that act.  It had a Board of Directors, but its actual

management was entrusted to its Executive Director, Mr. Joe Henry, Jr., and its Tenant Manager, Mrs. Jewel Cole.

Defendant, in the summer of 1951, began constructing at Pulaski, Tennessee, a housing project of 80 apartments for rent. It employed an architect to plan and supervise the work and a general contractor, R. E. Dunn Co., to furnish the materials and do the work according to the plans and specifications. The contractor made a subcontract with John C. Holt to install the interior plumbing and the appliances. Each apartment was furnished with appliances for use of butane gas—a stove, a heater, a water heater.

On November 15, 1952, the contractor listed 32 of the apartments as completed and ready for occupancy, and defendant accepted them from the contractor. This acceptance was effective as of 10:00 A. M. November 15, 1952, and was evidenced by a writing executed by Mrs. Cole in the name of defendant by Joe W. Henry, Jr., she signing in that form because he was absent at the time.

At the same time defendant, by its Tenant Manager, took charge of these 32 apartments, advertised them as ready and fit for occupancy, began leasing them, receiving rents in advance, having the tenants move in, and servicing the apartments—turning in the gas at the meters, lighting and adjusting the appliances preparatory to delivering possession to the tenants.

On November 15, 1952, defendant, through Mrs. Cole, leased to plaintiffs apartment No. 281, which was one of the 32 defendant had accepted from the contractor. Plaintiffs did not see this apartment before leasing it. It seems that it was being washed or cleaned up at the time, and Mrs. Cole showed them another similar one, and

stated that theirs would be ready and they could move into it the next day, which was Sunday.

On that Saturday the gas supply was not ready until about 6:00 P. M. Then Holt, who had been the subcontractor, and Criner, who had been the job inspector, and three or four men from the Butane Gas Company, began servicing the apartments—turning in the gas, lighting and adjusting the appliances for the tenants. These men worked until late that night, and thought they had finished servicing all of the apartments.

But there were three that were not serviced. Mrs. Cole had leased these three to tenants and had told the tenants to move in the next day, Sunday. One of these was No. 281, leased to plaintiffs, and they moved in Sunday afternoon November 16, 1952, which was a very cold, damp day. Finding no heat in the apartment, Mr. Smith went to see Mrs. Cole and found her servicing one of the other two apartments, and she told him she would send a man to service their apartment.

She called Holt that Sunday about noon and asked him to come and service the remaining three apartments. He did come about 4 o'clock that afternoon, and she sent him to service plaintiffs' apartment—to turn in the gas at the meter, light and adjust the appliances, and demonstrate them to plaintiffs, who had never used gas before and knew little or nothing about it.

There had been a leak in the gas line just outside plaintiffs' apartment, and a chemical with a strong odor had been put in the line to enable defendant's employees to find the leak and repair it. Holt knew about this. But neither he nor plaintiffs knew of the defect in the gas line in the pantry in the apartment. A screw cap designed to close the end of the pipe was missing, leaving the line open so that gas could fill the pantry and kitchen.

When Holt arrived at plaintiffs' apartment, he first turned in the gas at the meter, and then went into the kitchen, told plaintiffs to watch him so that they would see how he lighted the appliances. While Mrs. Smith stood in front of the stove, Holt turned on the gas and began striking matches to light the stove. She said she smelled gas. He told her it was not gas but a chemical that had been used in the pipe. He kept on striking matches trying to light the stove, and suddenly there was a flash and a terrific explosion, which burned Mrs. Smith badly and Mr. Smith to a less degree.

Thus there was evidence on which the jury could find that defendant's agent leased plaintiffs this apartment, holding it out as ready and fit for occupancy when in fact it was dangerous because of the defect in the gas line; that plaintiffs, believing it to be like the other apartment shown them by the agent, did not inspect it or learn of the defect; and that such defect, plus the conduct of Holt above detailed, caused the injuries sued for.

It is true in the law of landlord and tenant there is no implied warranty that the premises are suitable for the purposes for which they are let, Boyd v. McCarty, 142 Tenn. 670, 674, 222 S. W. 528; but in the law of negligence the landlord owes a duty to the tenant, and others on the premises in the right of the tenant, "not to expose them to danger which he knows or could know by the exercise of reasonable diligence." Hines v. Willcox, 96 Tenn. 328, 331, 34 S. W. 420, 421, 34 L. R. A. 824, 832, 833; Willcox v. Hines, 100 Tenn. 538, 550, 46 S. W. 297, 300, 41 L. R. A. 278, 279, 281, 66 Am. St. Rep. 770.

" 'The ground of liability upon the part of a landlord when he demises dangerous property has nothing special to do with the relation of landlord and tenant. It is the ordinary case of liability for personal mis-

feasance, which runs through all the relations of individuals to each other.' Willcox v. Hines, [supra] 100 Tenn. 538, 549, 46 S. W. 297, 299.'' Kilmer v. White, 254 N. Y. 64, 73, 171 N. E. 908, 911; Robinson v. Tate, 34 Tenn. App. 215, 232, 236 S. W. (2d) 445, 452.

It is said that, under the ''Willcox Cases'', the relation of landlord and tenant ''may almost be said to be confidential in its nature.'' Smith v. Tucker, 151 Tenn. 347, 362, 373, 270 S. W. 66, 70, 41 A. L. R. 830. This is true in the sense that the landlord owes a duty to disclose to the tenant the true condition of the premises. But this duty, as said above, is founded, not on the relation of landlord and tenant, but in the law of negligence, which puts on everyone the duty to take care not to expose another to an unreasonable risk of harm.

█ So the rule in this State is that ''if a landlord lease premises which are, at the time, in an unsafe and dangerous condition, he will be liable to his tenant for damages that may result, if he knows the fact and conceals it, or if, by reasonable care and diligence, he could have known of such dangerous and unsafe condition [provided reasonable care and diligence is exercised by the tenant on his part].'' Hines v. Willcox, 96 Tenn, 148, 160, 33 S. W. 914, 916, 34 L. R. A. 824.

This rule was declared in 1895 and has been observed ever since as the law. Willcox v. Hines, supra; Robinson v. Tate, supra; Manes v. Hines & McNair Hotels, Inc., 184 Tenn. 210, 214, 197 S. W. (2d) 889; Jolly Motor Livery Corp. v. Allenberg, 188 Tenn. 452, 458, 221 S. W. (2d) 513; Glassman v. Martin, 196 Tenn. 595, 601, 269 S. W. (2d) 908, 910.

█ This does not make the landlord an insurer of the safety of the premises, or put upon him the extreme duty of constant care and inspection, but it does place on

him the duty to use reasonable care and diligence to inspect the premises to see that they are turned over to the tenant in reasonably safe condition. Hines v. Willcox, supra, 96 Tenn. 331, 34 S. W. 420; Prosser on Torts, 651; Robinson v. Tate, supra, 34 Tenn. App. 232, 236 S. W. (2d) 445; Jolly Motor Livery Corp. v. Allenberg, supra, 188 Tenn. 458, 221 S. W. (2d) 513; Glassman v. Martin, supra, 196 Tenn. 601, 269 S. W. (2d) 908.

Defendant, however, contends that it cannot be held liable for this defect in the apartment; that it employed a reliable independent contractor, which in turn employed Holt as subcontractor; that if the defect was due to the negligence of anyone, it was the negligence of the contractor or of Holt; and that defendant is not liable for their negligence because they were not its servants but independent contractors.

Defendant further contends that it cannot be held liable for the negligence of Holt, if any, in turning in the gas, striking matches, and causing the explosion, because he was not performing any service for it, or acting as its servant, but was acting as subcontractor performing the contract obligation of both the contractor and the subcontractor to install and "deliver such equipment in whole and satisfactory operating condition".

The fault with this argument is that it overlooks the fact that defendant had already accepted delivery. The contractor had listed these 32 apartments, including the one here involved, as completed and ready for occupancy, and defendant had accepted them from the contractor, taken possession and leased them to tenants, and was servicing them and delivering possession to the tenants.

The effect of defendant's acceptance of these apartments from the contractor, and of its taking charge and leasing them to the tenants, was to substitute defend-

ant, the landlord, in the place of the contractor, as the party responsible to the tenants for the dangerous condition of the premises. Hester v. Hubbuch, 26 Tenn. App. 246, 255, 170 S. W. (2d) 922; Evens v. Young, 196 Tenn. 118, 129, 264 S. W. (2d) 577; 27 Am. Jur., Independent Contractors, Secs. 37, 55; 57 C. J. S., Master and Servant, Sec. 595.

The rule is well stated in the text of American Jurisprudence as follows:

"* * * When the work is finished by the contractor and accepted by the employer, the liability of the former generally ceases, and the employer becomes answerable for damages which may thereafter accrue from defective conditions of the work. Before acceptance, the employer must see to it that the work, as to strength and durability, and all other particulars necessary to the safety of the property and persons of third parties, is subjected to proper tests and that it is sufficient. By acceptance and subsequent use, the owner assumes to the world the responsibility of its sufficiency; and as to third persons, the liability of the contractors has ceased and his own commenced." 27 Am. Jur., Independent Contractors, Sec. 37.

Defendant contends that, since it employed a competent and reliable independent contractor to construct the apartments, it had a right to assume that the work had been well done and was safe; and that it owed no duty to the lessee to inspect the work of the independent contractor to discover the dangerous condition of the premises.

Defendant relies on Newman v. Sears, Roebuck & Co., 77 N. D. 466, 43 N. W. (2d) 411, 17 A. L. R. (2d) 694, for this contention. That case held that the lessor had no

duty to inspect work done by an independent contractor. But the reason was that in that State a lessor is liable only for defects which he actually knows and conceals, not those he could know by reasonable care and diligence, and he has no duty to inspect the premises in any case.

Defendant also cites Jolly Motor Livery Corp. v. Allenberg, supra. There, a building had burned and the owner hired an independent contractor to clear away the debris and make the vacant lot into a parking lot. The contractor did that and left a brick wall standing at the north edge of the lot. The owner leased the lot to plaintiffs for a parking lot. The wall fell and damaged the lessee's cars.

The wall had been inspected by the lessee, the City Building Inspector, and the Chief of the Fire Prevention Bureau; and all of them thought it was safe. The Court held there was no evidence of any negligence on the part of the lessor. Even though he had employed a reliable independent contractor to make the premises safe, the Court said [188 Tenn. 458, 221 S. W. (2d) 515]: "His duty was to exercise reasonable care and diligence to see that the premises were turned over to plaintiffs in a reasonably safe condition."

██ ██ We think that in the case before us defendant lessor owed the plaintiffs a like duty of reasonable care and diligence to see that the primises were turned over to them in a reasonably safe condition; and that the jury could find that defendant breached this duty, failed to use reasonable care to inspect the premises, that a visual inspection would have revealed the defect, and that defendant was guilty of negligence and liable for this dangerous defect.

██ We also think the jury could find from the evidence that Holt, in servicing the apartment, was perform-

ing defendant's service and acting as its servant; that in turning in the gas and causing it to escape from the open line into the kitchen, in not noticing the defect or the escaping gas, in striking matches and setting the gas afire, Holt was guilty of negligence causing the explosion and the injuries sued for; and that defendant as his master was liable therefor.

Defendant has assigned some other matters for error. We have considered all of them and found them without merit. We think they do not require further discussion. All the assignments of error are overruled and the judgments of the Circuit Court affirmed. Judgments will be entered here for plaintiffs against defendant for the amounts of the judgments below with interest. The costs of the appeal in error are adjudged against defendant and the surety on its appeal bond.

Hickerson and Shriver, JJ., concur.