Truman **JOHNSON** et ux., Appellants,

v.

**OMAN CONSTRUCTION COMPANY, INC.**
et al., Appellees.

Supreme Court of Tennessee.

Jan. 6, 1975.

John T. Conners, Jr., M. Taylor Harris, Jr., Nashville, for appellants.

Michael Miller, Larry Snedeker, Edward S. Kelly, Jr., Nashville, for appellees.

## OPINION

HARBISON, Justice.

This is an action for wrongful death brought by Mr. and Mrs. Truman Johnson for the death of their son Ken Johnson which occurred on October 30, 1972 as the result of a single car accident. The accident occurred in the City of Berry Hill, Tennessee, a municipal corporation. Named as defendants in the action are the City of Berry Hill together with the Metropolitan Government of Nashville and Davidson County, Tennessee and Oman Construction Company.

The suit was dismissed by the Cirucit Court on motions filed by each of the municipal corporations pursuant to Rule 12 of the Tennessee Rules of Civil Procedure, and as to defendant Oman Construction Company, Inc. the suit was dismissed on motion for summary judgment filed pursuant to Rule 56.

As to the two municipal corporations, therefore, the case is before this Court only upon the allegations of the complaint. With respect to Oman Construction Company, plaintiff is confronted with the provisions of Rule 56.05 to the effect that when a motion for summary judgment is made and supported by affidavits, an adverse party may not rest upon the mere allegations or denials of his pleading. The rule states that his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue of fact for trial. Oman Construction Company filed certain affidavits and exhibits to which no response was made on behalf of the plaintiff.

The allegations of the complaint state that the son of the plaintiffs lost his life when he drove an automobile into a guardrail at the terminus of Biloxi Avenue in the City of Berry Hill. It is alleged that Biloxi Avenue had previously been a through street, but that on the date of the accident the street had been terminated and interrupted by reason of the construction of an interstate highway. It is alleged that the construction of the interstate was performed by Oman pursuant to a written contract between that company and the State of Tennessee.

The complaint alleges that pursuant to the contract of construction, Oman was required to erect a 40-foot guardrail or barrier at the point of interruption of Biloxi Avenue and cause to be erected at or on the said guardrail a stop sign so as to warn approaching motorists of the roadway construction.

It is further alleged that the two municipal corporations were required to and did undertake to maintain roadways in Davidson County in a safe and proper condition and in particular "to warn motorists of dangers and hazards on the roadway by the erection of proper and adequate roadway signs." The complaint alleges that "said signs" were required to be in conformity with the minimum standards established by the Manual on Uniform Traffic Control Devices on Streets and Roadways adopted by the Department of Highways of the State of Tennessee.

There are no contract documents exhibited to the complaint, nor is there any other or more specific reference to said manual, or any portion thereof, delineating the type or kind of signs referred to by the plaintiffs. There are no statutory references in the entire complaint.

The complaint alleges that on and prior to the date of October 30, 1972 Oman had interrupted Biloxi Avenue and had erected a guard-type barrier consisting of a single metal strip approximately 40 feet long across the terminus of the avenue. The complaint alleges that said metal guardrail was not striped, painted, illuminated or in any other fashion designed to give warnings to motorists of its location. The complaint also states that Oman had negligently failed to construct a stop sign as required by its contract at said barricade.

Again there is no specification of any statutory or contractual requirement that the guardrail be striped, painted or illuminated, and there is no statement that the stop sign called for by the contract was one of the types specified in the manual above referred to.

The complaint alleges that the two municipal corporations "had caused to be erected several hundred feet east of the said barricade, a small, inadequate and ill-placed dead-end type sign which did not afford adequate and proper warning to the traveling public of the barricade ahead." It is alleged that neither governmental body did anything further to warn motorists of the location of the barricade, despite the fact that said governmental bodies knew or should have known of the location of the barricade and that it was a hazard, not being constructed in accordance with the contractual requirements. It is alleged that the barricade would be particularly dangerous on dark and foggy nights.

Plaintiffs further allege that in the early morning hours of October 30, 1972, their son was driving his automobile in an easterly direction on Biloxi Avenue. It is alleged that the night was dark and the atmosphere quite foggy in the area. The son of plaintiffs struck the barricade, damaging the front of his automobile. It is alleged that the decedent suffered immediate injury to his chest and abdomen, and that he later died from internal bleeding.

The concluding portion of the complaint charges the defendants with joint liability for failure to comply "with their respective duties to warn the traveling public of the hazard of the interrupted Biloxi Avenue." Specifically, the complaint charges:

"Approach signs were absent and inadequate; the barricade was not sufficient-

ly and properly marked, in particular to reflect its location on dark and foggy evenings; and there was no sign erected at the barricade."

It is alleged that these acts and omissions on the part of the defendants combined and concurred so as to result in the death of the son of the plaintiffs.

▇▇▇ As to the municipal corporations, we conclude that the plaintiffs rely primarily upon common law negligence.* It is admitted, however, by the plaintiffs that written notice was not given to either of the municipal corporations in accordance with the terms and provisions of T.C.A. § 6–1003. This statute provides that no suit shall be brought against any municipal corporation on account of personal injury or property damage resulting from a defective or negligent condition in any street, alley, sidewalk or highway of the municipality unless written notice is given within 90 days after the injury. Failure to give the prescribed notice is expressly made a defense to any liability which might otherwise exist "on account of the defective or negligent condition of said street, alley, sidewalk, or highway . . ."

One of the municipal corporations, the City of Berry Hill, has pled lack of notice under this statute as a defense to the action. The obstruction in the present case, however, was a permanent one, erected by Oman under a contract with the State. Neither municipal corporation erected the barricade or contracted for the work concerning it. We, therefore, do not deem the existence of the barricade to be a "defective or negligent condition of said street" within the purview of T.C.A. § 6–1003. Accordingly we hold that failure of the plaintiffs to give written notice to either of the municipal corporations of the existence of the barricade is not a defense to

---

* There is some suggestion in the briefs that plaintiffs claim a breach of T.C.A. § 54–508 regarding traffic signs. In our view, the complaint is insufficient to charge a statutory violation in light of the explicit requirements of Rule 8.05 of the Tennessee Rules of Civil Procedure. Our disposition of the case, however, would be the same even if the complaint had explicitly charged violation of the statute above cited.

the action and we do not deem it necessary to discuss the other questions raised in the briefs of the parties concerning the scope or applicability of T.C.A. § 6–1003.

■■■■ The pertinent allegations of the complaint against the municipal corporations charge them with negligence in failing to erect and maintain proper traffic control signs, or to have adequate or proper traffic control devices in the area. It is well settled in this jurisdiction, however, that the location of traffic control signs and the selection of the types of signs erected are governmental functions, for which municipal corporations enjoy governmental immunity. See Sullivan v. Herbert, 225 Tenn. 564, 473 S.W.2d 453 (1971). One exception to this rule which has been recognized in the cases is that liability may lie where the plaintiff alleges facts sufficient to constitute a "virtual trap", but the allegations of the present complaint are insufficient to bring that rule into operation. See Sullivan v. Herbert, *supra*.

■■■■ This Court does not regard with favor the doctrine of sovereign immunity as applied to municipal or county governments. We note the rapid trend of other American jurisdictions toward abrogation or substantial modification of governmental immunity. See Restatement Second, Law of Torts, Tentative Draft No. 19, § 895 et seq. (1973); Prosser, Law of Torts, 1010–1013 (3d ed. 1964). In adhering to the rule Tennessee is now among the minority of states.

This Court regards the doctrine as an anachronism and as at variance with modern concepts of justice. We note, however, that the General Assembly has enacted the Government Tort Liability Act, T.C.A. § 23–3301 et seq., effective January 1, 1974. This act was not in force at the time of the accident involved in this litigation. As was pointed out by the Court in the recent case of City of Memphis v. Bettis, 512 S. W.2d 270, 272 (Tenn.1974), the new act

"indicates a willingness on the part of the legislature to alter the law of sovereign immunity . . ."

The new statute, however, in effect permits local option as to the liability of cities, counties and other political subdivisions of the state. It purports to remove immunity in a number of areas but permits a local government to "exempt itself" under certain conditions.

We do not regard this statute as dealing with the subject in a complete or comprehensive manner. We are reluctant to take judicial action in this area, however, without giving the General Assembly an opportunity to establish a comprehensive and uniform tort claims procedure governing suits against cities, counties and other political subdivisions or their agencies in the duly constituted courts of the state.

Further, there is no insistence in the present case that the doctrine of immunity should be abrogated by the Court. For the reasons stated, we do not deem it appropriate to take such action at this time, and it accordingly results that we affirm the judgment of the trial court in dismissing the complaint as to the Metropolitan Government. The defendant City of Berry Hill predicated its motion to dismiss solely upon the ground of lack of written notice, as above pointed out, and not upon the ground of governmental immunity generally. Accordingly its motion to dismiss on the ground stated by it is overruled and the case is reversed and remanded for further proceedings as to that defendant.

With respect to the defendant Oman Construction Company, the issues are complex and our problem is rendered more difficult because there are before us only the allegations of the complaint on the one hand and an affidavit and accompanying letter in support of a motion for summary judgment on the other hand. In support of its motion for summary judgment, Oman Construction Company, Inc. filed an affidavit of a corporate officer, stating that the work done by the company was

done "pursuant to" its contract, that the company completed the work in question on October 26, 1972, and that on that date its work had been inspected and accepted as complete by the Tennessee Highway Department and the Federal Highway Administration. In support of this affidavit there was attached a letter dated November 8, 1972 from the project engineer-manager, showing the project as having been inspected, completed and accepted on October 26, 1972.

The affidavit of the Oman official further states that from and after October 26, 1972 Oman Construction, Inc. "had no relations with or responsibility for the said premises, its work having been completed and accepted." The affidavit does not squarely meet the allegations of the complaint and does not deny the allegations of the complaint that the barrier in question was not striped, illuminated or in any other fashion designed to give warnings to motorists of its location. Neither is there a denial that there was no stop sign on the barricade. The affidavit, however, seems to us to state that the work was done in accordance with the contract between Oman and the State of Tennessee, and the statement that it was inspected and approved indicates to us that the intentions of the contracting parties had been carried out and satisfied. As stated, the plaintiff has filed no countervailing affidavit or documentary evidence to refute the statements made in the affidavit of the Oman official. Accordingly we deem the allegations of the complaint to the effect that Oman had not performed the work in accordance with its contract to be overcome by the affidavit in the record, and we must view the case as one in which Oman had satisfactorily and correctly performed its work according to the contract documents and specifications.

Further, the complaint does not charge Oman with any statutory violations. The allegations with repect to the insufficiency of the "dead-end" sign which had been erected east of the barricade pertain to the municipal corporations, and there is no contention made, insofar as we can ascertain, that Oman was responsible for the erection of any of the traffic control signs in the area.

■ Nevertheless, the complaint does state certain basic facts which stand undenied in the combined motion to dismiss and motion for summary judgment filed by Oman. These allegations are to the effect that the barricade, as constructed, was not properly illuminated or painted so as to be visible to motorists, particularly in darkness or other adverse driving conditions. The complaint does allege that the acts of Oman in thus erecting such a barricade constituted proximate negligence, resulting in the death of the decedent. There are allegations that the municipal corporations involved knew or should have known that the barricade was dangerous to motorists. While these allegations are not expressly made as to Oman, they are inferentially contained in the complaint. There is lacking from the complaint any allegation that the barricade was in the same condition on the date of the accident as it was when completed by Oman Construction Company. Apparently, however, only four days had elapsed between the date of formal inspection and delivery of the construction work and the date of the accident, and, liberally construing the allegations of the complaint, we think it may be safely inferred from the allegations that there had been no such change or alteration. Of course, as previously stated, we do not have a developed record before us and are dealing merely with allegations and motions of the parties. Certainly, however, it would be incumbent upon the plaintiff to show that there had been no material alteration or change in the condition of the barricade between the date it was delivered by Oman and the date of the accident, before the plaintiff would be entitled to recover from Oman.

■ The legal question is then presented on this record as to whether or not the

completion of the work and its acceptance by the owner automatically, and as a matter of law, discharged Oman, an independent contractor, from liability to third parties, assuming that negligence on the part of Oman can be established as alleged. It is recognized by both parties that in previous holdings both this Court and the Court of Appeals of Tennessee have applied the rule that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and it has been accepted by the owner or the employer. This, in the past, has been considered to be the general rule. See Evens v. Young, 196 Tenn. 118, 128, 129, 264 S.W.2d 577 (1954); Pulaski Housing Authority v. Smith, 39 Tenn.App. 213, 282 S.W.2d 213 (M.S. 1955); Hester v. Hubbuch, 26 Tenn.App. 246, 170 S.W.2d 922 (E.S. 1943).

Both parties recognize that this question has been reconsidered in many jurisdictions in recent years, and that the more current general view is that a contractor is held to the standard of reasonable care for the protection of third parties who may foreseeably be endangered by his negligence, even after acceptance of the work by the contractee. See Restatement of Torts Second, § 385 (1965); Prosser, Torts 681 (5th Ed. 1971); 41 Am.Jur.2d, Independent Contractors, §§ 49–50 (1968).

Of course, it must be recognized that the acceptance of the work by a conscious and responsible owner, particularly where any defects are obvious and patent, may bring into play the rules regarding independent intervening causation. See Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S.W. 2d 840 (1946). However whether the intervening act of another is truly independent and unforeseeable may be a question of fact in many situations. Kroger Co. v. Giem, 215 Tenn. 459, 471, 387 S.W.2d 620 (1964). Certainly a contractor may point to the inspection and acceptance of his completed work by a sophisticated and conscious owner as being a circumstance bearing upon the reasonableness of the conduct of the contractor.

We are of the opinion, however, that the older rule, discharging the independent contractor automatically and as a matter of law in all situations, upon the acceptance of his work, is not the better view. In our opinion, if an independent contractor is guilty of negligence in performing his work in such a way that it could reasonably be foreseen that the owner or third parties would probably sustain personal injury or property damage as a result of the negligent condition, then the independent contractor should not, as a matter of law, be discharged merely because his work has been accepted and delivered to the owner. Indeed, this is the tenor of the recent legislative enactment, now codified as T.C.A. § 28–314 et seq., making special provisions in the statutes of limitations for actions against persons performing or furnishing the design, planning, supervision, observation of construction, construction of or land surveying in connection with an improvement to real property. There is no indication in these statutes of limitations that building subcontractors or craftsmen are automatically to be discharged from liability to injured claimants simply because of the completion and acceptance of the work. Instead, claimants are allowed four years after substantial completion of such improvements in which to file actions, under the circumstances delineated in these statutory provisions.

In the case of Vason v. Nickey, 438 F.2d 242 (6th Cir. 1971), the Court of Appeals for the Sixth Circuit, applying Tennessee law, permitted an action by a third party against a contractor for alleged faulty design and construction of a building, even though the building had been completed several years prior to the date of the plaintiff's injury.

Accordingly, we are of the opinion that the allegations of the complaint in this case as to Oman Construction Company, Inc. are sufficient to state a cause of ac-

tion for common law negligence. Prior decisions in this state to the effect that the completion and acceptance of the work of an independent contractor by the owner automatically, and under all circumstances, discharge the independent contractor are overruled.

The cause is reversed insofar as the action of the plaintiffs against the City of Berry Hill and Oman Construction Company, Inc. is concerned, and remanded for further proceedings consistent with this opinion. One-third of the costs of this appeal will be assessed against the plaintiffs, and one-third each against the defendants City of Berry Hill and Oman Construction Company, Inc.

FONES, C. J., and HENRY, COOPER and BROCK, JJ., concur.

OPINION ON PETITION FOR RE-HEARING

HARBISON, Justice.

A thoughtful petition for rehearing has been filed on behalf of the appellee, Oman Construction Company, Inc., to which the Court has given careful consideration. Many of the issues raised in the petition, however, can be determined only upon a record more fully developed than that before us, which consists only of the allegations of the complaint and a combined motion to dismiss and motion for summary judgment.

■ With respect to the procedural matter mentioned in the petition for rehearing arising out of the case of Ford Motor Company v. Moulton, 511 S.W.2d 690 (Tenn.1974), this Court on January 22, 1975 has adopted a rule, applicable both to this Court and to the Court of Appeals, covering both pending cases and future cases, which in effect reinstates the procedural rule which was stricken in the *Moulton* case. This rule deals with the record on appeals in summary judgment

cases, and permits the consideration of affidavits and other materials filed prior to the hearing in the trial court, without the necessity of authentication by the trial judge.

The petition for rehearing is denied.

FONES, C. J., and COOPER, HENRY and BROCK, JJ., concur.