IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2001 Session

## GUY WILSON, ET AL. v.
## THOMPSON CONSTRUCTION COMPANY, ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 20134-C    C.L. Rogers, Judge**

---

**No. M2000-03200-COA-R3-CV  - Filed December 10, 2001**

---

This is a suit by Guy Wilson and his wife Rhessa, owners of a building in Gallatin, Tennessee, against their general contractor in the construction of an addition to the building and against their electrical subcontractor. The complaint charges negligence in the use of a defective fiberglass ladder that broke as Guy Wilson was climbing on it to inspect the work. The trial court held that the general contractor, Thompson Construction Company, had breached no duty of care to Plaintiffs and that the electrical contractor, Gary R. Boyd, was an independent contractor for whose alleged negligence Thompson Construction Company was not vicariously liable. On such basis, the trial court granted summary judgment to Thompson Construction Company on all issues and, pursuant to Tennessee Rules of Civil Procedure 54.02, entered final judgment on all issues in favor of Thompson Construction Company. Plaintiffs appeal, and we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Philip N. Elbert and Kendra E. Samson, Nashville, Tennessee, for the appellants, Guy Wilson and Rhessa Wilson.

Robert L. Estes and Leonard F. Pogue, III, Nashville, Tennessee, for the appellees, Thompson Construction Company and Gary R. Boyd d/b/a Boyd Electric.

## OPINION

Plaintiffs/Appellants, Guy and Rhessa Wilson, owned a building located at 122 West Franklin Street, Gallatin, Tennessee, in which Loco-Lupe's restaurant was operated by a lessee. Some time early in 1998, they determined to have an addition made to the building for expansion of the

restaurant. Appellee, Thompson Construction Company (hereinafter "Thompson"), had previously done extensive renovation work on the restaurant building for the Wilsons, and when the renovation architect drew the plans for the 1998 expansion, Guy Wilson specifically asked the architect to be sure that Thompson received a copy of the plans in order that they might submit a bid. Thompson was the low bidder and subcontracted with Defendant, Gary R. Boyd, dba Boyd Electric (hereinafter "Boyd"), to do all electrical work on the project. Guy Wilson visited the job scene periodically to inspect the work and discuss various matters with Thompson's employees.

On December 15, 1998, near the end of the renovation as Gary Boyd was finishing up the electrical work on the building, Boyd had placed an extension ladder against the building to gain access to the roof area. In Boyd's absence, Guy Wilson started to ascend the extension ladder in order to look at the roof. The extension ladder broke, and Wilson fell to the ground, extensively injuring his leg.

On December 14, 1999, the Wilsons sued Thompson and Boyd alleging negligence on the part of Thompson and on the part of Boyd, for which Thompson was alleged to be vicariously liable. Thompson defended on the basis that it was guilty of no act of negligence and that Boyd was an independent contractor whose negligence, if any, could not be attributed to Thompson.

After discovery was completed, Thompson filed a motion for summary judgment both on Plaintiffs' theory of individual negligence by Thompson and vicarious responsibility for the alleged negligence of Boyd. The trial court, on November 16, 2000, granted summary judgment on all issues as to Thompson and certified same as final under Rule 54.02. Plaintiffs appealed.

Two issues were presented for review:

A.    Whether the trial court was correct in holding that the plaintiff failed to prove the essential elements necessary to maintain an action for negligence.

B.    Whether the trial court correctly applied the law in holding that Thompson Construction could not be vicariously liable for the alleged negligence of its subcontractor, defendant Gary Boyd d/b/a Boyd Electric.

As there is neither allegation nor proof of any defective or unsafe condition at the work site, other than the alleged defective extension ladder owned by Boyd from which Guy Wilson fell. The real issues boil down to two questions, to wit: (1) is there a dispute of material fact as to whether or not Defendant Thompson knew or should have known that the ladder was defective, and (2) whether there is a disputed material fact as to whether Boyd was an employee of Thompson Construction Company or an independent contractor.

In addressing first the alleged negligence of Thompson, it is necessary to acknowledge the unique facts of the case. Guy Wilson is the owner and landlord of the premises. He employed Thompson to construct an addition to his building based on architectural plans approved by him.

He remains the landowner, but is suing his selected contractor alleging negligence by the contractor causing injuries to himself.

No similar case in Tennessee is cited by either party, and none has been discovered by the Court. The cases cited by Appellant, *Kantner v. Combustion Engineering*, 701 F.Supp. 943 (D.N.H. 1988); *Larimore v. Carolina Power & Light*, 531 S.E.2d 535 (S.C. Ct. App. 2000); *Pence Construction Corp. v. Watson*, 470 S.W.2d 637 (Tex. 1971), are cases involving the liability of general contractors occupying the premises to employees of subcontractors and persons other than the landowner. Historically, liability of a landowner for injuries to an invitee is predicated on the landowner's superior knowledge of the condition of his property, thus, constituting him to be the person normally best able to prevent harm to others. *Kendall Oil Co. v. Payne*, 293 S.W.2d 40, 42 (Tenn. Ct. App. 1955); *Paradiso v. Kroger Co.*, 499 S.W.2d 78 (Tenn. Ct. App. 1973). The Supreme Court of Tennessee has held:

> This duty of the owner or occupier of the land arises from the position of control which this person in possession occupies; he is the person normally best able to prevent any harm to others. *See Paradiso, supra*. This same position of superior knowledge and control gives rise to the requirement that the possessor of land exercise ordinary or reasonable care to provide a reasonably safe place for the performance of work by employees. *Stringer v. Cooper and Cooper Office Equipment, Inc.*, 486 S.W.2d 751 (Tenn. App. 1972).

*McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980).

In this case, the owner of the property is the injured Plaintiff. Defendant contractor has no superior knowledge as to the condition of the premises, and no defect of any kind is alleged or proven as to the premises. The only basis asserted for liability is that a fiberglass extension ladder placed against the building by an electrical subcontractor broke under the weight of the 240 pound owner of the property causing him injury. There is no allegation that the land beneath the ladder was not compacted sufficiently to hold the ladder in place or that the ladder was improperly positioned, either on the ground or against the building.

Wilson asserts that, as a condition to drawing money on his construction loan in order to pay Thompson, it was necessary for either him or his representative to periodically check the progress of the work on the addition to the building. Mr. Wilson was checking this progress toward the end of the job when he decided to inspect the air conditioning unit located on the roof of the building, and, without the knowledge or consent of either Thompson or Boyd, Wilson proceeded to ascend Boyd's fiberglass ladder leaning against the building. Before climbing, Wilson checked the ladder to make sure that it was properly set. He acknowledged that the ladder felt steady, and he experienced no difficulty or movement of the ladder as he climbed up it.

Assuming that the principal contractor is the possessor of the premises within the *McCormick* rule and that such relationship is sufficient to cast upon Thompson the "safe work place duty" of an owner, it has long been held that such a duty does not make the possessor of the land an insurer of

the safety of the premises. *Jolly Motor Livery Corp. v. Allenberg*, 221 S.W.2d 513, 515 (Tenn. 1949).

To establish a cause of action for negligence, Plaintiff must prove: (1) a duty of care owed by Defendants to Plaintiff; (2) conduct by Defendants falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; (5) proximate or legal causation. *see McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991). The initial requirement involving the existence of a legal duty is a question of law for the court requiring a balancing of the foreseeability and gravity of the potential harm against the burden imposed in preventing that harm. *McClung v. Delta Square Ltd. P'ship.*, 937 S.W.2d 891, 901 (Tenn. 1996).

Since summary judgment was granted by the trial court, only questions of law are involved on appeal, and there is no presumption of correctness regarding the action of the trial court. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Our review is *de novo* on the record before this Court with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). Applying the standards set forth in *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994), *Doe v. Linder Constr. Co.*, 845 S.W.2d 173 (Tenn. 1992), *Rice v. Sabir*, 979 S.W.2d 305 (Tenn. 1998) and *Roberts v. Roberts*, 845 S.W.2d 225 (Tenn. Ct. App. 1992), we cannot find that any general duty of care owed by Thompson encompasses the duty to guard against the events involved in the injury of Wilson.

In *Eaton v. McLain*, the Tennessee Supreme Court held:

This Court has recently enunciated the proper analysis to be used in determining the scope of the duty of care in a negligence case. In *Doe v. Linder Constr. Co.*, 845 S.W.2d 173 (Tenn. 1992), we stated:

The term reasonable care must be given meaning in relation to the circumstances. [citation omitted]. Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury. [citation omitted]. The risk involved is that which is foreseeable; a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. 'The plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury.' [citation omitted].
. . . .

> The pertinent question is whether there was any showing from which it can be said that the defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused the plaintiff's injuries.

*Doe*, 845 S.W.2d at 178.

> As indicated in *Doe*, the question of whether the McLains' general duty of care encompasses the duty to guard against the acts set forth in the complaint involves an analysis of the foreseeability of the risk to which Ms. Eaton was exposed. In other words, the issue is whether Ms. Eaton has made "any showing from which it can be said that the *defendants reasonably knew or should have known of the probability of an occurrence such as the one which caused [her] injuries.*" *Id.* (emphasis added).

> We are of the opinion that no such showing has been made. In order for the McLains to be charged with the duty to leave on the light in the hall and to lock the basement door, they must have been able to reasonably foresee that Ms. Eaton would get out of bed in total darkness, walk across the hall, and step into the basement stairwell, all without turning on any lighting whatsoever.

*Eaton,* 891 S.W.2d at 594.

To extend the duty of a general contractor, on the facts of this case, would require Thompson to foresee not only that Wilson would use the ladder belonging to a subcontractor but also that the subcontractor would make use of a defective ladder thus extending the contractor's duty to a meticulous inspection of the ladder, logically, the duty could not stop there but must also onerate the principal contractor with the same duty to meticulously inspect not just his own equipment on the job but all independent contractor equipment that might conceivably cause an injury. Nothing in Wilson's own inspection of the ladder indicated any problem. The ladder belonged to Boyd not Thompson. The foundation under the ladder was solid, and Wilson determined beforehand that the ladder was properly positioned. Nothing gave Thompson "superior knowledge" as to any defect in the ladder. To establish the duty, a risk must be foreseeable, and such "is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." *Eaton,* 891 S.W.2d at 594.

As in *Jones v. Exxon Corp*., 940 S.W.2d 69 (Tenn. App. 1996), a "remote possibility" is not a "reasonably foreseeable probability." Id. at 73. No duty was owed by Thompson to Wilson under the facts established in this case, and the trial court correctly granted summary judgment on this ground.

Employee or Independent Contractor?

Tennessee has long followed the near universal rule that an employer or general contractor is not ordinarily liable for the negligence of an independent contractor. *Potter v. Tucker*, 688 S.W.2d

833 (Tenn. Ct. App. 1985); *International Harvester Co. v. Sartain*, 222 S.W.2d 854 (Tenn. Ct. App. 1948).

The Tennessee Supreme Court has held:

> 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work. The employer of such a contractor, if he be a fit and proper person, and the work be not in itself unlawful or a nuisance in itself, or necessarily attended with danger to others, will not be responsible for his negligence, or that of his subcontractors or his servants. Mr. Thompson, in his work upon Negligence, says that 'in every case, the decisive question is, had the defendant the right to control, in the given particular, the conduct of the person doing the wrong?' 2 Thompson on Negligence, 909.' *Powell v. Virginia Construction Co.*, 88 Tenn. 692, 697-698, 13 S.W. 691, 692, 17 Am.St.Rep. 925.
> This leading case has been constantly followed in our decisions. *See National Optical Stores Co., Inc. v. Bryant*, 181 Tenn. 266, 181 S.W.2d 139. Also, a full discussion of the rule may be found in *D.M. Rose & Co. v. Snyder*, 185 Tenn. 499, 206 S.W.2d 897.

*Jolly Motor Livery Corp. v. Allenburg*, 221 S.W.2d 513, 515 (Tenn. 1949).

In determining whether the relationship between the general contractor and the subcontractor is that of employer-employee or general contractor-independent contractor, the factors to be considered are: (1) the right to control the conduct; (2) the right of termination; (3) the method of payment; (4) the freedom to select and hire helpers; (5) the furnishing of tools and equipment; (6) self scheduling of work hours; (7) the freedom to offer services to other entities. *See Stratton v. United Intermountain Telephone Co.*, 695 S.W.2d 947, 950 (Tenn. 1985).

Prior to ever making its bid to Wilson, but after reviewing the architectural drawings for the addition to the building, Thompson sought bids from subcontractors. On April 29, 1998, Boyd Electric submitted its bid to "Thompson Construction" for "electrical" at Loco-Lupe's. The description of the work was to "complete electrical per drawings on new addition 30 amp 220 circuit for a/c." They submitted a bid for the electrical work of $3,078.00. Using this electrical bid, along with numerous other subcontractor bids, Thompson, on June 15, 1998, submitted its bid for the total contract of just under $80,000. Included in this bid was the Boyd bid for the electrical work together with a percentage added to that bid, making the total bid for electrical work $3,785.80.

Boyd contracted to do this work for Thompson according to his own methods in accordance with plans and specifications submitted to him and used in forming the basis of his monetary bid for a complete electrical job. Boyd used his own employees, furnished his own tools and equipment (including the alleged defective ladder), and scheduled his own working hours in order to fit the

electrical work in proper timing with the other parts of the construction. Boyd also served other customers on other electrical jobs.

The Wilsons primarily seek to avoid independent contractor status by asserting that Thompson retained the power to terminate the relationship with Boyd at will. This assertion is based upon the premise established by testimony that if Thompson was not satisfied with Boyd's work he could be removed by Thompson. The proof establishes no dissatisfaction with the work of Boyd, and the fact that Thompson could breach his contract with Boyd by terminating his services without cause is not the equivalent to the unconditional right to terminate without cause.

The contract between Thompson and Boyd was not written, and the whole arrangement is best described by Mr. Boyd in his deposition:

> Q.     . . . How long had you worked at the job before this accident?
> A.     I guess, strictly guessing now, on and off, not every day, for probably four to six weeks. I'm guessing on that.
> Q.     Had you been there every day?
> A.     No, sir.
> Q.     How many days had you worked?
> A.     Out of that period of time, probably ten, at the most.
> Q.     Did you keep a time sheet?
> A.     No, sir. I kept up with my laborer's time for paying him every week, wrote it in a book.
> Q.     Do you still have that book?
> A.     Yes, sir.
> Q.     Do you have a record, then, that book or some other record, which would tell you what days you were at that job?
> A.     No, sir. All I write down on that is, I list the days of the week, first, second, third and fourth, whatever, and then each day I do that. And at the end of that week, I add up his time. I don't put that we worked two hours here on this job and one hour here on this job, no. I've got a book like that now that I've been using for the last seven or eight months.
> Q.     Did you have a calendar or something that told you when you were supposed to be out at this job on 122 West Franklin Street?
> A.     No.
> Q.     What did you do at this job?
> A.     Done the electrical rough-in first. That's pulling all your wire that's going to be buried in walls, laying out boxes, electrical boxes and stuff. And then I get that done and I get it inspected. Mr. Wright will call me when the sheetrock and painting gets done and I'll go back and trim it out.
> Q.     What had you done already, by time of the accident? You told me electrical rough-in.

A. We already had that. We done already had all the plugs and switches put in and breakers on the panel. Right then, we was finishing up the candlelights in the ceiling and tying in the heat and air. And that's all we lacked on the job.

Q. Did you come back and finish work after the accident?

A. Yes, sir.

Q. What more did you do after the accident?

A. Tied in the heat and air unit and finished up the lights in the ceiling.

Q. On that job, did you have a written contract at any time with anybody?

A. No, sir.

Q. How did you come to be on the job?

A. Mr. Wright called me, wanted to know about how much it would run. I told him and he said do it.

Q. Were you paid by the hour or by the job?

A. By the job. On rough-in, I collected to pay my bills and pay labor, and final, I got the rest of the money.

Q. Did you turn in invoices?

A. To whom?

Q. To Mr. Wright.

A. No, sir. Yes. An invoice. I'm sorry. Yeah, I made a bill out to him.

Q. And on the bill, did you specify hours and materials?

A. No, sir. Labor and material. I didn't specify how many labor hours.

Q. So it's just a general labor and material bill?

A. Right.

Q. The only reason you were on that job is because Mr. Wright asked you to be there, right?

A. Asked me to finish up, yes, sir.

Q. Were you the only electrical contractor?

A. Yes, sir.

The trial court granted summary judgment to Thompson on the basis that Boyd was an independent contractor and Thompson was, thus, not vicariously liable. There is no material evidence to the contrary, and the trial court correctly granted summary judgment. The judgment of the trial court is in all respects affirmed with costs assessed against Appellants. The case is remanded for such further proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE