IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 1, 2003 Session

# TRACIE MARIE SHIPWASH, ET AL. v. MEADOWOOD APARTMENTS

**Appeal from the Circuit Court for Knox County**
**No. 1-619-01     Dale C. Workman, Judge**

**FILED MARCH 31, 2004**

**No. E2003-01528-COA-R3-CV**

This is a premises liability case. Tracie Marie Shipwash and Dennis Marine sued Meadowood Apartments ("Meadowood") to recover for damage done to their respective vehicles when a tree located near a parking area at the apartment complex fell on the vehicles during a severe storm. At the bench trial below, the plaintiffs offered the testimony of a tree expert, who opined that his examination of photographs of the fallen tree revealed signs of deterioration and that the tree should have been removed prior to the storm. The trial court held that the tree removal service hired by Meadowood to make an annual inspection of the apartment property was Meadowood's agent, and that, as a consequence of this fact, Meadowood is liable based upon its imputed constructive notice of the dangerous condition created by the tree's condition. Meadowood appeals. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Plaintiff's Complaint**
**Dismissed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Jeffrey R. Thompson, Knoxville, Tennessee, for the appellant, Meadowood Apartments.

T. Scott Jones, Knoxville, Tennessee, for the appellees, Tracie Marie Shipwash and Dennis Marine.

**OPINION**

I.

On November 9, 2000, the plaintiff Tracie Marie Shipwash was visiting the plaintiff Dennis Marine at the apartment complex owned by Meadowood. Ms. Shipwash parked her vehicle in one of Meadowood's parking areas; Mr. Marine's vehicle was also parked there. While the two vehicles were parked there, a strong storm moved through the area. The storm caused the apartment complex

to lose electricity. The storm also blew over three trees on the property. One of the trees fell on the plaintiffs' vehicles, causing extensive damage to both.

In April, 2001, the plaintiffs sued Meadowood in general sessions court. That court entered a judgment in favor of Meadowood on September 4, 2001, and the plaintiffs appealed to the trial court. A bench trial was held in the trial court on April 21, 2003. At the trial, the plaintiffs called Jessie Edwards as an expert in diagnosing and treating problems with trees. Mr. Edwards testified that he examined photographs taken of the tree after it fell and, based upon those photographs, he found that the tree was exhibiting signs of deterioration and decay prior to the storm. He testified that the tree should have been removed. Specifically, Mr. Edwards testified that the tree was suffering from root rot; that there was a hole of "pretty good dimension where the squirrels had been going in and out of" and that the hole was approximately one to two feet above the ground; that there were white spots on the tree indicating that the tree was dying or was already dead; and that the tree had brown leaves on it. Based upon these observations, Mr. Edwards opined that the tree should have been removed prior to the storm.

Both of the plaintiffs testified that they had not noticed any problems with the tree prior to the storm on November 9, 2000. Meadowood's property manager, Alice Minet, testified that she contracted with Nature's Way, a tree service, to inspect all of the trees on the property each spring. Ms. Minet stated that Nature's Way had conducted the most recent inspection in March, 2000, and that they did not report any problems with the tree in question. Ms. Minet stated there were occasions when Nature's Way reported problems with trees and that Meadowood, in each instance, had arranged for the removal of those trees. Both Ms. Minet and Susan Rymer, the assistant manager at the time of the storm, testified that they had no knowledge of any problems with the tree that fell on November 9, 2000, and that no one had reported any problems with the tree prior to its fall.

At the conclusion of the trial, the court, in ruling for the plaintiffs, issued its decision from the bench and made the following findings:

> [T]he key to there being civil liability for [dangerous] conditions is notice; that the owner must have notice that there's something wrong before they can be held liable. . . . If [the owner] hire[s] an agent they cannot contract away their duty. It is a way of fulfilling their duty and they remain liable if the agent negligently performs that duty.

> * * *

> The only expert proof I have says that – and I find no reason to disbelieve the expert – says that in my looking at this tree after it falls, looking at the condition as it existed on that day there are telltale signs that there was something wrong with this tree and there was a defect in the tree.

And that's the only proof I have. I have no countervailing evidence to the contrary so with that I've got to assume an expert looking at this tree before it fell would have known that it was a defective and dangerous tree there.

Now, that leads us back to your defense position with, the fine people that run [Meadowood] are not experts, they're just citizens; are they held to the standard of an expert. They hired somebody who may be an expert but that doesn't mean they had knowledge. When they hired that expert that expert either did not find it and it was there to be seen, would not have reported back to the manager of [Meadowood]; or found it and either did report back and this manager is not telling the truth – which I do not believe. That's another possibility. I don't believe she's intentionally misrepresenting to this Court what happened. So she wasn't told then.

So either they found it and didn't report it in her notice; either way the property owner is liable. They cannot contract away their liability. They are held to the standards and they are to have held the duty to know as an expert would know about such obvious conditions of the trees growing up and around where you build apartment buildings and parking lots.

* * *

Plaintiffs are entitled to recover their damages which are stipulated. . . .

From this judgment, Meadowood appeals.

II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); **Wright v. City of Knoxville**, 898 S.W.2d 177, 181 (Tenn.1995); **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn.1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn.1993).

III.

A.

The threshold issue in this case is whether, in some way, Meadowood "caused or created" a dangerous condition on its property in the form of a decaying tree, or, if it did not create the condition, whether it had actual or constructive notice of the dangerous condition represented by the decaying tree. The Supreme Court recently addressed the principles of premises liability:

> Business proprietors are not insurers of their patrons' safety. However, they are required to use due care under all the circumstances. *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996). "Liability in premises liability cases stems from superior knowledge of the condition of the premises." *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: 1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. *Martin*[], 946 S.W.2d [at] 318 [](citing *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 47 (Tenn. [Ct.] App. 1995); *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. [Ct.] App. 1980)). We have previously held that constructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition. *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986).

*Blair v. West Town Mall*, No. E2002-02005-SC-R11-CV, 2004 WL 440386, at *2-*3 (Tenn., filed March 11, 2004).

The trial court in the instant case based its decision upon the following facts, which it found, either expressly or by clear implication: that the subject tree's condition prior to the storm was such as to constitute a dangerous condition and that this dangerous condition existed when Nature's Way made its spring, 2000, inspection. The trial court concluded from these facts that Nature's Way was chargeable with constructive notice of this dangerous condition in the spring of 2000 and that, because the court found that Nature's Way was Meadowood's agent, Meadowood was likewise chargeable with constructive notice.

-4-

The trial court did not expressly address whether Meadowood had actual or constructive notice of a dangerous condition other than by way of a principal-agent relationship with Nature's Way. Because the trial court did not expressly say how it found the facts with respect to the issue of notice separate and apart from the notice imputed to Meadowood by way of Nature's Way, "[w]e therefore must conduct our own independent review of the record to determine where the preponderance of the evidence lies," *see Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000), with respect to whether Meadowood "had actual or constructive notice," *see Blair*, 2004 WL 440386, at *3, separate and apart from the notice that Nature's Way had.

B.

We begin by noting that the first prong of the *Blair* inquiry is not implicated by the facts of this case because there is absolutely no evidence that the condition of the tree was "caused or created by" Meadowood. *See Blair*, 2004 WL 440386, at *3. Next, we find that there is no evidence of *actual* notice on the part of Meadowood of the dangerous condition of the tree. *See id.* Both the property manager and the assistant property manager testified, without contradiction, that they had no knowledge of the tree's condition prior to the storm. The trial court seems to have found this testimony credible.[1] Therefore, if liability is to be found in this case, it must be premised upon a finding of constructive notice.

In determining whether Meadowood had constructive notice of the dangerous condition of the tree, we must examine the testimony of the witnesses. Mr. Edwards, the plaintiffs' expert witness[2], testified that his review of the photographs of the tree revealed four indicators that something was wrong with the tree: the hole in the tree trunk; the brown leaves; the white spots on the tree trunk; and the appearance of root rot. Based upon these four factors - and the hole and the brown leaves in particular - Mr. Edwards testified that the tree should have been removed. However, Mr. Edwards did *not* testify that these four signs – while certainly visible – were such as to indicate to a lay person, *e.g.*, the property managers of Meadwood, that the tree constituted a dangerous condition and needed to be removed.

Turning to the testimony of the plaintiffs, Ms. Shipwash stated that she did not notice anything wrong with the tree when she parked near it on November 9, 2000. Mr. Marine testified that he had lived in his apartment unit for close to a year; that he had parked near the tree on several

---

[1] The trial court, alluding to the testimony of Meadowood's manager, stated as follows:

> I don't believe she's intentionally misrepresenting to this Court what happened. So she wasn't told then.

[2] Meadowood contends that the trial court erred in admitting the testimony of Mr. Edwards, as he could not "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid. 702. We disagree. The testimony of Mr. Edwards was relevant in determining whether the tree created a dangerous condition on the Meadowood property, which was indeed "a fact in issue." Accordingly, we find Meadowood's argument with respect to this issue to be without merit.

occasions; that he had walked past the tree numerous times; and that he never noticed anything wrong with it and had never told anyone at Meadowood that there was a problem with the tree. Finally, with respect to the property manager and assistant property manager, both testified that they never noticed a problem with the tree and that they had not received any reports of any problems with the tree. When questioned about the presence of holes in trees, Ms. Minet, the property manager, testified that she has "seen many knotholes, what I considered to be a knothole, and not thought it would endanger the integrity of the tree." She then stated that she relied on the expertise of Nature's Way in determining when a tree needed to be removed.

Based upon our review of this testimony, we find that the evidence, excluding that pertaining to the involvement of Nature's Way, preponderates that Meadowood did not have constructive notice that the subject tree constituted a dangerous condition. The plaintiffs contend that the mere presence of a visible hole in the tree and brown leaves on the tree should be enough to charge Meadowood with constructive notice of the tree's condition; however, a property owner must be on notice of a *dangerous* condition, and we do not find that a hole and brown leaves are enough to constitute notice of danger. Indeed, we take judicial notice of the obvious – that leaves turn colors in the late fall. This tree fell on November 9, 2000. While Mr. Edwards testified that the leaves on this particular type of tree would not change colors until December, we cannot say that a lay person would attach any significance to a tree with brown leaves in November. Moreover, while Mr. Edwards testified that the four indicia of deterioration on the tree signified to *him* that the tree should have been removed, he did not say that a lay person should or would recognize those factors as a sign that the tree was decaying and, hence, dangerous. In fact, the other four witnesses who testified at trial – including both plaintiffs – testified that they noticed nothing wrong with the tree prior to its fall. As previously stated, the evidence preponderates in favor of a finding that there was no constructive notice of a dangerous condition.

C.

Next, we must determine whether the trial court erred when it found an agency relationship between Nature's Way and Meadowood, thus giving rise to Meadowood's liability for the alleged negligence of Nature's Way.

Before analyzing the issue of agency, we note that Mr. Edwards, in offering his expert testimony on the indicia of decay in the tree, did not offer an opinion as to how long any of those telltale signs of decay had been present. However, assuming for the purpose of argument that Nature's Way had constructive notice that the decaying tree presented a dangerous condition, there is still no proof in the record of an agency relationship between Nature's Way and Meadowood. The burden of proving that such a relationship exists rests on the party asserting it. *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. Ct. App. 1984). As this Court has previously stated, "if there is one factor more indicative of an employer/employee relationship than any of the others, it is the employer's right of control over work done for him." *Youngblood v. Wall*, 815 S.W.2d 512, 517 (Tenn. Ct. App. 1991). Aside from hiring Nature's Way to conduct annual inspections of the trees on the Meadowood property, there is nothing in the record to indicate that Meadowood dictated to Nature's

Way how it was to perform its work. Indeed, all evidence points to Nature's Way being an independent contractor and, hence, not the agent of Meadowood. Generally speaking, one is not liable for the conduct of an independent contractor. *See **Wilson v. Thompson Constr. Co.***, 86 S.W.3d 536, 541 (Tenn. Ct. App. 2001) (citations omitted).

The trial court concluded, as a matter of law, that Meadowood had a non-delegable duty to protect its residents from the dangerous condition created by this tree. The court stated that Meadowood "cannot contract away their liability" and that it must be held to "the duty to know as an expert would know about such obvious conditions of the trees growing up and around where you build apartment buildings and parking lots." The law in Tennessee is clear that "one who conducts *an inherently dangerous activity* has a non-delegable duty to 'exercise caution adequate to the peril involved, as for example, in giving notice of its dangerous character.'" ***Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.***, 45 S.W.3d 588, 602-03 (Tenn. Ct. App. 2001) (quoting ***Int'l Harvester Co. v. Sartain***, 32 Tenn. App. 425, 454, 222 S.W.2d 854, 867 (1948) (emphasis added). In our judgment, the ownership and operation of an apartment complex and the maintenance of trees on the grounds does not amount to an "inherently dangerous activity" that would give rise to a non-delegable duty. A property owner is not an insurer of the safety of those who enter upon its premises, ***Blair***, 2004 WL 440386, at *3. If the owner does not know of or have constructive notice of the dangerous condition, there is no liability. ***Id***.

We conclude, even assuming that Nature's Way knew or should have known in the spring of 2000 of the dangerous condition presented by the subject tree, nevertheless this knowledge is not imputable to Meadowood because there was no principal-agent relationship between Meadowood and Nature's Way. Because Meadowood had no notice of the dangerous condition caused by the decaying tree, we reverse the decision of the trial court finding Meadowood liable for the damage to the plaintiffs' vehicles.

IV.

The judgment of the trial court is reversed and the plaintiffs' complaint is hereby dismissed. Costs at trial and on appeal are taxed to Tracie Marie Shipwash and Dennis Marine. We remand for collection of costs.

_____
CHARLES D. SUSANO, JR., JUDGE