IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 20, 2005 Session

## THE ALISON GROUP, INC. v. GREG ERICSON, Individually d/b/a ERICSON & ASSOCIATES, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
No. CT-007121-01     Karen R. Williams, Judge

_____

### No. W2003-02973-COA-R3-CV - Filed June 3, 2005

_____

This appeal arises out of an action filed by Appellee to confirm an arbitration award. Appellants contest whether Appellee, as a foreign corporation without a certificate of authority, may avail itself of the Tennessee judicial system to enforce the arbitration award. The trial court determined that Appellee was exempted from the requirement of obtaining a certificate of authority and confirmed the arbitration award in favor of Appellee. Additionally, the trial court denied Appellee's request for attorney's fees incurred to collect the arbitration award. For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Prince C. Chambliss, Jr., Memphis, TN, for Appellants

Bruce D. Brooke, Memphis, TN; William C. Hearon, Miami, FL, for Appellees

### OPINION

### Facts and Procedural History

The Alison Group, Inc. ("Alison" or "Appellee") is a foreign corporation with its principal office in North Miami, Florida. Alison is in the business of procuring marketing premiums, specializing in promotional items such as logo items, signs, displays, and banners. It is undisputed that Alison does not hold a certificate of authority to conduct business in the state of Tennessee.

In 1992, Alison began enlisting the services of Greg Ericson ("Ericson") of Ericson & Associates.[1] Specifically, Ericson solicited orders from customers in Tennessee and elsewhere that would later be processed by Alison. The customer would be quoted a price for the items requested, and, if the customer accepted that price, Ericson would fill out a purchase order form with all the pertinent information. Ericson would then send this form via facsimile to Alison's office in Florida. Alison would reformat the form into a purchase order form used by Alison and approve or disapprove the order, depending on the results of the credit application for that customer. If Alison approved the purchase order, the company would send the order back to Ericson, who would proof the order for errors. Once Ericson approved the purchase order, he would send it back to Alison, which, in turn, would send the order to the manufacturer for processing. The manufacturer would send an invoice to Alison, which included the cost of shipping the final product to the customer.

Ericson and the Ericson Group received approximately ninety percent (90%) of their business from Alison.[2] Though it is undisputed that Ericson was not an employee of Alison and Ericson did not receive a salary from Alison, business cards were issued to Ericson, bearing his name and Alison's logo. One business card designated Ericson a national sales manager and another designated him the vice president of marketing. Though Larry Schweiger ("Schweiger"), president of Alison, testified that he did not tell Ericson how to run his office in terms of the day-to-day operations,[3] the parties dispute whether Ericson held the authority to sign a contract in behalf of Alison. Further, Ericson was paid on commission, never received a W-2 form from Alison, and did not work exclusively for Alison. Though the letterhead for Alison states that the company has offices in several cities including Miami and Tampa, Florida, Memphis, Tennessee, Cleveland, Ohio, Los Angeles, California, and New York City, New York, Schweiger testified that the Tampa office no longer existed and that these other locations were not offices with Alison employees but, rather, independent contractors like Ericson. Ericson stated that he supervised the members of the Cleveland office and in return received a twenty percent (20%) commission from those members' sales. Ericson also had assistants working for him which he paid but was reimbursed for these expenses by Alison.

Subsequently, in 1999, a dispute arose between the parties regarding whether any amounts were due to Alison on orders taken or placed with Ericson in 1999 which were directed through Ericson rather than Alison. The parties agreed to submit the dispute to arbitration in Memphis, Tennessee, for settlement. The arbitrator found in favor of Alison and awarded Alison a total of

---

[1] Ericson & Associates is a sole proprietorship owned and operated by Ericson. It appears that in 1999 Ericson began another business named The Ericson Group, Inc., a Tennessee corporation. For purposes of this opinion, we shall refer to Ericson & Associates and The Ericson Group collectively as the "Ericson Group." Additionally, Ericson & Associates, The Ericson Group, and Ericson shall be referred to collectively as "Appellants."

[2] With regard to Ericson's ability to work for other companies, Ericson stated in a letter to Larry Schweiger "[a]s I have always done in the past, I have been able to separate the business I do for Alison in 1999 from the business I do for Ericson in 1999 and beyond."

[3] Ericson testified that Alison gave him a lot of "leeway."

$62,891.37 with an additional award of expenses for the arbitration in the amount of $882.50. Thereafter, Alison sought to confirm the arbitration award in the circuit court for Shelby County. Ericson contested Alison's motion on the basis that Alison, as a foreign corporation, lacked a certificate of authority, and, therefore, Alison could not initiate any proceedings in a Tennessee court. After a hearing, the trial court determined that Ericson acted as an independent contractor and, thus, Alison was exempted from the requirement of holding a certificate of authority. As a result, the trial court confirmed the arbitration award in favor of Alison. The trial court denied Ericson's "motion to reconsider" and denied Alison's motion for an award of attorney's fees[4] incurred to collect the arbitration award. Ericson filed a notice of appeal[5] and presents the following issue, as we perceive it, for our review:

    I.       Whether the trial court erred when it determined Ericson was an "independent contractor" such that Alison was not required to have a certificate of authority to file an action to confirm the arbitration award.

Alison filed a cross-appeal and presents the following issue:

    II.      Whether the trial court erred when it awarded Alison discretionary costs but not attorney's fees incurred in the collection of the arbitration award.

For the following reasons, we affirm.

## Standard of Review

"[R]eview of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d) (2004). We review questions of law *de novo* affording no presumption of correctness to the trial court's conclusions of law. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## Independent Contractor and Certificate of Authority

Appellants argue that the trial court erred when it determined that, by virtue of the fact that Appellants acted as an "independent contractor" for Appellee, Appellee was exempted from the requirement of having a certificate of authority to initiate a proceeding in the state of Tennessee. Specifically, section 48-25-102(a) of the Tennessee Code provides that "[a] foreign corporation

---

[4]     The trial court did award Alison its discretionary costs with interest in the amount of $17,281.31.

[5]     We note that the notice of appeal was filed before the trial court's order on Ericson's motion to reconsider, which the trial court treated as a motion for a new trial, and Alison's motion for discretionary costs and attorney's fees. However, we are mindful that "[a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." Tenn. R. App. P. 4(b) (2004).

transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." Tenn. Code Ann. § 48-25-102(a) (2002). Additionally, section 48-25-101(a) of the Tennessee Code states that "[a] foreign corporation, except a foreign insurance corporation subject to the provisions of title 56, may not transact business in this state until it obtains a certificate of authority from the secretary of state." Tenn Code Ann. § 48-25-101(a) (2002). Finally, section 48-25-101(b) provides a list of actions which do not constitute "transacting business":

> (b) The following activities, among others, do not constitute transacting business within the meaning of subsection (a):
>> (1) Maintaining, defending, or settling any proceeding, claim, or dispute;
>> (2) Holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs;
>> (3) Maintaining bank accounts;
>> (4) Maintaining offices or agencies for the transfer, exchange, and registration of the corporation's own securities or appointing and maintaining trustees or depositories with respect to those securities;
>> (5) *Selling through independent contractors*;
>> (6) Soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts;
>> (7) Creating or acquiring indebtedness, deeds of trusts, mortgages, and security interests in real or personal property;
>> (8) Securing or collecting debts or enforcing mortgages, deeds of trust, and security interests in property securing the debts;
>> (9) Owning, without more, real or personal property; provided, that for a reasonable time the management and rental of real property acquired in connection with enforcing a mortgage or deed of trust shall also not be considered transacting business if the owner is attempting to liquidate the owner's investment and if no office or other agency therefor, other than an independent agency, is maintained in this state;
>> (10) Conducting an isolated transaction that is completed within one (1) month and that is not one in the course of repeated transactions of a like nature; or
>> (11) Transacting business in interstate commerce.

Tenn. Code Ann. § 48-25-101(b) (2002) (emphasis added). Hence, if the business conducted by Appellee falls within any one or more of these exceptions, Appellee is not a foreign corporation transacting business and, therefore, not subject to the requirement of Tenn. Code Ann. § 48-25-102(a).

In this appeal, the parties argue over whether Appellants constituted an independent contractor such that Appellee was not a foreign corporation "transacting business" within the state of Tennessee. The trial court determined that Appellants acted as an independent contractor. We agree. Schweiger testified that he did not instruct Ericson on how to run the day-to-day operations of Ericson's office. *See Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985); *see also Wilson v. Thompson Constr. Co.*, 86 S.W.3d 536, 541 (Tenn. Ct. App. 2001); *Barber v. Ralston Purina*, 825 S.W.2d 96, 99 (Tenn. Ct. App. 1991). Ericson's own testimony corroborates this fact when he admits that Appellee permitted him a lot of "leeway" to run his office. Further, Ericson testified that he was not an employee of Appellee and that he never worked exclusively for Appellee. *See Stratton*, 695 S.W.2d at 950; *see also Wilson*, 86 S.W.3d at 541; *Barber*, 825 S.W.2d at 99. More specifically, Ericson stated that ninety percent (90%) of his business was with Appellee. Schweiger also testified that Ericson was never instructed to work exclusively for Appellee.

Further, we note that Ericson was paid on commission rather than a salary directly from the Appellee. *See Stratton*, 695 S.W.2d at 950; *see also Wilson*, 86 S.W.3d at 541; *Barber*, 825 S.W.2d at 99. Additionally, he was never sent a W-2 form for income taxation but, rather, filed a 1099 form. Though Appellee supplied Ericson with business cards and stationary, Ericson worked out of his home and hired additional assistants, the cost for which Appellee reimbursed Ericson. *See Stratton*, 695 S.W.2d at 950; *see also Wilson*, 86 S.W.3d at 541; *Barber*, 825 S.W.2d at 99. Under the circumstances of this case, we cannot say that the trial court erred when it determined that Appellants acted as an independent contractor for Appellee. Therefore, we hold that Appellee is not barred from bringing the present action to enforce the arbitration award against Appellants for lack of a certificate of authority to transact business in the state of Tennessee.

### Attorney's Fees

On a cross-appeal, Appellee argues that the trial court erred when it denied Appellee's request for an award of attorney's fees incurred in enforcing the arbitration award. In Tennessee's version of the Uniform Arbitration Act, section 29-5-315 of the Tennessee Code provides as follows:

> Upon the granting of an order confirming, modifying or correcting an award a, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. *Costs of the application, and of the proceedings subsequent thereto, and disbursements may be awarded by the court.*

Tenn. Code Ann. § 29-5-315 (2000) (emphasis added). In addition to arguing that the trial court did not err in denying Appellee an award of attorney's fees, Appellants argue that several jurisdictions have interpreted this same provision as excluding the possibility of an award of attorney's fees.[6] *Int'l*

---

[6] In their reply brief, Appellants argue that the trial court erred when it awarded Appellee discretionary costs because Appellee did not make a motion within thirty (30) days of the order confirming the arbitration award dated
(continued...)

*Fed'n of Prof'l & Technical Eng'rs, Local 153 v. Chi. Park Dist.*, 812 N.E.2d 407, 412-13 (Ill. App. Ct. 2004); *Terra W. Townhomes, LLC v. Stu Henkel Realty*, 996 P.2d 866, 873 (Mont. 2000); *Nucor Corp. v. Gen. Bearing Corp.*, 423 S.E.2d 747, 751 (N.C. 1992). However, this Court and other jurisdictions have interpreted this provision of the Uniform Arbitration Act to permit an award of attorney's fees. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 882 P.2d 1274, 1280 (Ariz. 1994); *County of Clark v. Blanchard Constr. Co.*, 653 P.2d 1217, 1220 (Nev. 1982); *Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905, 909 (Tenn. Ct. App. 1991). Though the decisions of the courts of Illinois, Montana, and North Carolina are persuasive, we see no reason to overturn the *Wachtel* court's interpretation of section 29-5-315 of the Tennessee Code.

Additionally, as noted by the *Wachtel* court, a trial court has discretion to award attorney's fees. *Wachtel*, 830 S.W.2d at 909-10. Therefore, this Court may reverse the trial court's denial of an award of attorney's fees only for an abuse of discretion by the trial court. *Id*. Under the circumstances of this case, we cannot say that the trial court abused its discretion when it denied Appellee its attorney's fees incurred to collect the arbitration award. Therefore, we affirm the trial court on this issue as well.

---

[6](...continued)

November 12, 2003, in compliance with Tenn. R. Civ. P. 54.04(2). We cannot say that the award of discretionary costs constitutes error for failure to timely file a motion requesting costs and attorney's fees. On November 24, 2003, Appellee filed a notice of filing affidavits with the affidavit of Schweiger and William Hearon, Appellee's attorney, attached, outlining the costs and attorney's fees Appellee had incurred. It was not until March 4, 2004, that Appellee filed a motion for discretionary costs and attorney's fees with a sworn bill of costs and supporting affidavits. However, on November 19, 2003, Appellants filed a "motion to reconsider" which the trial court treated as a motion for a new trial. Subsequently, the trial court addressed both Appellants' motion for a new trial and Appellee's request for discretionary costs and attorney's fees in a final order on June 11, 2004.

This Court has previously addressed a similar set of circumstances in *Ashford v. Benjamin*, No. 02A01-9311-CV-00243, 1994 Tenn. App. LEXIS 706 (Tenn. Ct. App. Dec. 6, 1994). In that case, a judgment on a jury verdict was entered on June 4, 1993. *Ashford*, 1994 Tenn. App. LEXIS 706, at *1-2. That same day, the appellees filed a motion for a new trial or additur. *Id*. at *2. On July 7, 1993, the trial court denied appellees' motion for new trial but suggested an additur for Dorothy Jackson and Shirley Ashford. *Id*. On August 6, 1993, Ashford filed a motion for discretionary costs pursuant to Tenn. R. Civ. P. 54.04 and the trial court granted this motion on October 8, 1993. *Id*. This Court held that Ashford's motion was timely because it was filed within thirty (30) days of the order denying the motion for new trial and suggesting an additur. *Id*. at *4-5. In this case, Appellants filed a "motion to reconsider" on November 19, 2003, which essentially negated the finality of the order on November 12, 2003, for purposes of filing a motion for discretionary costs. Though Appellee filed its motion for discretionary costs before a final order on Appellants' "motion to reconsider," we cannot say that Appellee's motion is untimely.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court.  Costs of this appeal are taxed equally to Appellee, The Alison Group, Inc., and Appellants, Greg Ericson, individually and d/b/a Ericson & Associates and The Ericson Group, Inc., and their surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE