IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 5, 2009 Session

## CASON D. McINTURFF v. BATTLE GROUND ACADEMY OF FRANKLIN, TENNESSEE, ET AL.

Appeal from the Circuit Court for Davidson County
No. 06C-3128     Randy Kennedy, Judge

No. M2009-00504-COA-R3-CV - Filed December 16, 2009

The plaintiff ballplayer was hit by a baseball while sitting outside the dugout during a school baseball game. He sued the schools and the Tennessee Secondary School Athletic Association ("TSSAA") for failing to enforce the rules against his conduct. The trial court granted summary judgment to the TSSAA because the umpires were not agents of the TSSAA. The plaintiff appealed and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS, J., joined. PATRICIA J. COTTRELL, P.J., M.S., filed a concurring opinion.

Joseph P. Bednarz, Sr., Joseph P. Bednarz, Jr., and Joseph Napiltonia, Nashville, Tennessee, for the appellant, Cason D. McInturff.

Thomas I. Carlton, Jr. and Benjamin M. Rose, Nashville, Tennessee, for the appellee, Battle Ground Academy of Franklin, Tennessee; and Richard Lee Colbert and Courtney Lynch Wilbert, Franklin, Tennessee, for the appellee, Tennessee Secondary Schools Athletic Association.

### OPINION

FACTUAL BACKGROUND

This is one of the rare tort cases where the facts are essentially undisputed. Cason McInturff played baseball for Battle Ground Academy ("BGA"). On April 18, 2005, the BGA baseball team traveled to Father Ryan High School to play a regular-season game. During a portion of the game, McInturff sat on a bucket outside the team's dugout with one of the coaches because it was a good vantage point from which to watch the game. Unfortunately, while he was sitting outside the dugout, McInturff was struck in the head by a foul ball and severely injured.

The Tennessee Secondary School Athletic Association ("TSSAA") is a voluntary association of member schools. According to Executive Director Ronnie Carter, the TSSAA was organized to stimulate and regulate the athletic relations of Tennessee secondary schools. The TSSAA maintains eligibility rules for athletes and establishes the rules for each sport. The TSSAA has adopted a by-law which provides that the rule book published by the National Federation of State High School Associations ("NFSHSA") will be used as the game rules for baseball games between TSSAA member schools.[1] A statewide uniformity is thereby established for baseball games conducted between TSSAA member schools.

People who wish to umpire baseball games between TSSAA schools must register with the TSSAA. They must attend a "rules meeting" every two years. In exchange for their registration, the registrants receive a rule book, insurance benefits while officiating games between TSSAA schools, and the opportunity to officiate baseball games between TSSAA schools. Registration provides only an opportunity to officiate because TSSAA does not assign officials to regular season games. To officiate games, an official must register with a local officials' association. Schools contract with the local officials' associations, which assign officials to the games. The local associations also assign officials to non-TSSAA games as well. The officials are paid by the schools, not the TSSAA, for working regular season games. The TSSAA Board of Control sets the fee amount each umpire is paid and can revoke an official's registration "for just cause." The umpires provide their own uniforms, which must conform to NFSHSA standards, and transportation.

The umpires enforce the rules the TSSAA has adopted. By necessity, the NFSHSA rules are quite comprehensive. One such rule provides that a player shall not be outside the dugout if he is not a batter, runner, on-deck batter, in the coach's box, or playing defense. 2005 NATIONAL FEDERATION OF STATE HIGH SCHOOL ASSOCIATIONS BASEBALL RULES, 3-3(j), 30. Umpires are not allowed to pick and choose which rules they will enforce. An umpire who blatantly refuses to enforce the rules could be denied registration by the TSSAA and thus lose the opportunity to be chosen by the local officials' association to officiate games between TSSAA member schools. The official would still be eligible to officiate games involving non-member schools.

On November 29, 2006, Cason McInturff sued the TSSAA and others for the injuries he sustained. He alleged that the TSSAA was vicariously liable for the negligence of the umpires. On December 12, 2008, the TSSAA filed a motion for summary judgment claiming that it owed no duty to McInturff and that the officials were not agents or employees of the TSSAA. McInturff opposed the motion. On February 13, 2009, the trial court granted the TSSAA's motion. In accordance with Tenn. R. Civ. P. 54.02, the trial court determined that there was no just reason for delay and expressly directed the entry of a final judgment as to the TSSAA. Cason McInturff appealed.

---

[1]The by-laws also provide for the game rules for football, basketball, girls' softball, wrestling, girls' soccer, track and field, cross country, and girls' volleyball.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.*; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008).

ANALYSIS

Cason argues that the umpires were either the actual agents of the TSSAA or the apparent agents of the TSSAA. Therefore, he maintains, the TSSAA is vicariously liable for the umpires' negligence. Vicarious liability is defined as:

> the imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons. Indirect or imputed legal responsibility for acts of another; for example, the liability of an employer for the acts of an employee, or a principal for torts and contracts of an agent.

*Browder v. Morris,* 975 S.W.2d 308, 311 n.4 (Tenn.1998) (quoting BLACK'S LAW DICTIONARY 1566 (6th ed. 1990)).

It has long been the view of Tennessee courts that, in its broadest sense, the term agency "includes every relation in which one person acts for or represents another." *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008) (quoting *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000)); *see also Howard v. Haven*, 281 S.W.2d 480, 485 (Tenn. 1955). An agency relationship is created by the acts of the principal rather than the acts of the agent. *Harben v. Hutton,* 739 S.W.2d 602, 606 (Tenn. Ct. App. 1987). The existence of an agency relationship is not dependent upon a contract, an explicit agreement, or an understanding between the parties." *White*, 33 S.W.3d at 723. When determining whether an agency relationship exists, the court examines the conduct and relationship of the parties. *Id.*; *V.L. Nicholson Co. v. Transcon Inv. and Fin. Ltd., Inc.* 595 S.W.2d 474, 483 (Tenn. 1980). "Whether an agency relationship exists 'is a question of fact under the circumstances of the particular case . . . .'" *White*, 33 S.W.3d at 723 (quoting *McCay v. Mitchell*, 463 S.W.2d 710, 715 (Tenn. Ct. App. 1970)). The right to control the conduct of the agent

is the essential test in determining whether an agency relationship exists. *Jack Daniel Distillery v. Jackson,* 740 S.W.2d 413, 416 (Tenn. 1987).

TSSAA maintains that the umpires are independent contractors. Usually, an employer or general contractor is not liable for the actions of an independent contractor. *Wilson v. Thompson Constr. Co.*, 86 S.W.3d 536, 541 (Tenn. Ct. App. 2001). Several factors should be considered when assessing whether a person is an agent or an independent contractor: "(1) the right to control the conduct of the work, (2) the right of termination, (3) the method of payment, (4) the freedom to select and hire helpers, (5) the furnishing of tools and equipment, (6) the self-scheduling of work hours, and (7) the freedom to render services to other entities." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005) (citing *Beare Co. v. State,* 814 S.W.2d 715, 718 (Tenn.1991)).

The extent of the right of control is the most significant difference between an agent and an independent contractor although it is not always determinative. *Sodexho Mgmt. Inc. v. Johnson*, 174 S.W.3d 174, 181 (Tenn. Ct. App. 2004). "Where the agent represents the will of the principal as to the result of the work but not as to the means or manner of accomplishing the work, it is an independent contractor." *Id.* As the Tennessee Supreme Court observed long ago, "[a]n independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work." *Powell v. Va. Constr. Co.,* 13 S.W. 691, 692 (Tenn. 1890).

TSSAA provides registered umpires with some instruction via rules meetings, a rule book, insurance benefits while officiating a game between TSSAA schools, and the opportunity to officiate baseball games between TSSAA schools. In return, the umpires agree to officiate according to the rule book when they are assigned to a TSSAA game by a local officials' association. In other words, the umpires agree to abide by, and ensure the participants abide by, the regulatory framework (rules) established by the NFSHSA for baseball games played between TSSAA member schools.

The TSSAA deals with umpires to achieve a result – uniform rules for all baseball games played between TSSAA member schools. The TSSAA does not supervise regular season games. It does not tell an official how to conduct the game beyond the framework established by the rules. The TSSAA does not, in the vernacular of the case law, control the means and method by which the umpires work.

In addition, other factors point to the umpires being independent contractors. The officials are paid by the schools for officiating regular season games. The fact that the TSSAA Board of Control sets the per game fee amount each umpire is paid is merely part of the officiating framework which keeps umpires independent – no TSSAA school pays an umpire more than any other TSSAA school. The umpires provide their own uniforms. They are free to work for schools and organizations not affiliated with the TSSAA.

In view of the totality of the undisputed facts, we agree with the trial court that these officials are not agents of the TSSAA.

The officials are not apparent agents of the TSSAA either. The plaintiff contends that merely showing up to officiate a game between TSSAA schools wearing a shirt and a ball bag with a TSSAA logo gives the umpire the apparent authority of the TSSAA. However, apparent authority must be established by the acts of the principal, not the acts of the purported agent or the perception of a third party. *Boren*, 251 S.W.3d at 433. The plaintiff's logic would mean that someone sitting in the crowd watching the game wearing a New York Yankees cap would have the apparent authority to act as a scout for the World Champions. An organization's patch or logo by itself cannot confer authority. That can only be done by the principal. There is no evidence that the TSSAA intended to confer its authority to the officials by giving them a patch.

Finally, McInturff maintains that "TSSAA owed a duty to take reasonable steps to protect students from the inherent risks associated with high school athletics" by "assuming control over every aspect of the conduct of the athletic events of its member schools." The existence of a duty is a question of law. *Hurd v. Flores*, 221 S.W.3d 14, 22 (Tenn. Ct. App. 2006). The Tennessee Supreme Court has said that a "'risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed *by defendant's conduct* outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm.'" *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000) (quoting *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995)) (emphasis added). As has already been demonstrated, TSSAA did not assume control over every aspect of the conduct of the athletic events of its member schools. The officials ran the game. The TSSAA engaged in no activity regarding the baseball game except provide a framework for the conduct of athletic contests conducted by member schools. This is the "general control over all athletic contests" to which the TSSAA by-laws refer. The TSSAA owed no duty to Cason McInturff in this regard.

## CONCLUSION

The trial court is affirmed. Costs of appeal are assessed against the appellant, Cason McInturff, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE